[No. B188432. Second Dist., Div. Three. Aug. 22, 2007.]

CHERYL ARCHDALE et al., Plaintiffs and Appellants, v.
AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE
COMPANY, Defendant and Respondent.

450

454

## COUNSEL

Girardi & Keese, Thomas V. Girardi and Robert W. Finnerty for Plaintiffs and Appellants.

Horvitz & Levy, Peter Abrahams, Daniel J. Gonzalez; Branson, Brinkop, Griffith & Strong and John R. Campo for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—The plaintiffs and appellants Cheryl and Donald Archdale and George Godinez[1] seek reversal of a summary judgment entered in favor of the respondent, American International Specialty Lines Insurance Company (AIS), on plaintiffs' complaint for breach of contract and breach of the implied covenant of good faith and fair dealing.[2]

The Archdales had sued Godinez and others in the underlying action for damages for personal injuries arising out of a multiple vehicle accident. Godinez and his employer were covered under a liability policy issued by AIS with a coverage limit of $500,000. In this action, plaintiffs allege that AIS failed to accept multiple reasonable settlement offers that were within AIS's aforesaid policy limit. AIS provided a defense to the underlying action which went to trial and resulted in a judgment in favor of the Archdales and against Godinez and his employer in the sum of $1,269,000.

---

[1] When this case was filed in the trial court, Godinez's employer (identified below as Arrow Ready) was also named as a plaintiff. Arrow Ready later dismissed its claim. When we refer to plaintiffs collectively, we generally are referring to the Archdales and Godinez, but, if the context requires, the term may also include Arrow Ready. The only appellants, however, are the Archdales and Godinez.

[2] Another insurer, American International Group (AIG), was also named a defendant in plaintiffs' complaint. Although the record is not entirely clear as to the nature of AIG's involvement in this dispute or the reason for its ultimate dismissal as a defendant, the judgment appealed from herein was entered solely in favor of AIS and that insurer is the only respondent in this appeal. In our discussion of the facts in this matter we will, for the sake of both clarity and simplicity, refer to AIS as the only insurer involved.

The complaint in this action was filed on September 12, 2003, and sought recovery in both contract and tort.[3] AIS moved for summary judgment, arguing that since the original judgment in the underlying action had been entered on May 3, 1999, the applicable statutes of limitation barred plaintiffs' causes of action. The trial court accepted that argument and granted AIS's motion.

While we agree that Godinez's tort claim is barred by the expiration of the applicable two-year statute of limitations, we will reverse the trial court's rejection of the contract claim asserted by the Archdales. In reaching that result, we hold that (1) where a liability insurer has provided a defense and, prior to the filing of an action by an insured (or assignee), has fully paid out the amount of its policy limit, it may not be liable for the breach of any express policy provision promising such benefits, but nonetheless could be held liable for a breach of the implied covenant of good faith and fair dealing; (2) an insurer's failure to accept a reasonable settlement offer to resolve a third party claim against its insured constitutes a breach of the covenant of good faith and fair dealing implied in a liability policy; (3) such a breach, if it results in an excess judgment against the insured, will support a claim sounding in contract as well as tort; (4) the amount of the excess judgment is a consequential damage of such a breach within the meaning of Civil Code section 3300 and may be recovered as a matter of contract damages; in such event, the applicable limitations period is four years (Code Civ. Proc., § 337, subd. 1); (5) while an insured's claim against an insurer arising from a failure to accept a reasonable settlement offer will accrue upon the entry of an excess judgment in the underlying action, the running of the limitations period is tolled until the time for appeal has expired or, if an appeal is taken, until entry of a final judgment and the issuance of a remittitur; and (6) Civil Code section 2313 will not invalidate an insured's retroactive assignment of a claim against his or her insurer if the assignment is made prior to the expiration of the relevant limitations period on that claim.

We conclude that summary judgment was properly granted as to the Archdales' first cause of action for breach of contract, but not as to their second cause of action for breach of the implied covenant of good faith and fair dealing for which they sought a remedy in contract. The trial court, however, correctly held that the tort claim asserted by plaintiff Godinez was barred by the applicable two-year statute of limitations. We will therefore affirm the judgment in part and reverse in part.

---

[3] As we discuss below, the Archdales have claims against AIS that are separate and distinct from those of Godinez. For two of the three causes of action in plaintiffs' complaint (see fn. 7, *post*), the Archdales rely on an assignment of rights by Godinez. Such assignment supports the Archdales' contract claim for recovery of the excess judgment rendered in the underlying action. Godinez retained his tort claim for emotional distress and punitive damages.

## FACTUAL AND PROCEDURAL HISTORY

On June 9, 1994, an accident occurred at 50th Street and Avenue N near Lancaster, California, when an 18-wheel truck owned by Arrow Ready Mix (Arrow Ready) and driven by Godinez, collided with two other vehicles. Cheryl Archdale, driving one of those vehicles, was injured. She and her husband, Donald Archdale, filed a complaint for negligence and loss of consortium against Arrow Ready, Godinez, and other defendants. AIS had issued an insurance policy that provided automobile liability coverage to Arrow Ready[4] and Godinez in the amount of $500,000 and obligated AIS to defend those insureds in any legal action arising from a claim potentially covered under the policy.

After a trial, the jury found that the negligence of Arrow Ready, Godinez and the Follendores was a cause of injury or damage to the Archdales and allocated 90 percent of the fault for the accident to those defendants.[5] A judgment was entered on May 3, 1999, in favor of the Archdales in the sum of $1,269,000 and against Arrow Ready, Godinez and the Follendores.

On August 30, 1999, however, the trial court (1) ordered that the judgment entered on May 3, 1999, be vacated, (2) denied the new trial motion filed by Arrow Ready, Godinez, and the Follendores, (3) granted a motion for judgment notwithstanding the verdict as to the Follendores, (4) denied a similar motion by Godinez and Arrow Ready, and (5) made orders taxing certain costs. On October 15, 1999, the trial court entered an "Amended Judgment." It expressly stated that such amended judgment *superseded* the judgment entered on May 3, 1999. The amended judgment ordered that the Archdales recover $1,269,000 from Godinez and Arrow Ready, together with costs of $23,495, for a total judgment of $1,292,495, plus interest at 10 percent per annum, from May 3, 1999, until paid.[6]

---

[4] Also named as an insured under the policy was H. D. Follendore, Inc., a corporation that did business under the name of Arrow Ready Mix. The corporation's owners were Hartwell D. Follendore and Brenda Follendore.

[5] The remaining 10 percent of fault was allocated by the jury equally between two other defendants whose involvement in the matter is not relevant to this appeal.

[6] Although no issue is raised on this point, the trial court's order in the underlying action should be regarded as one that amended the original judgment entered on May 3, 1999, *only as to the defendants Follendore*. The court had granted their motion for judgment notwithstanding the verdict and thus the "Amended Judgment" entered on October 15, 1999, should have been deemed a judgment determining that the Follendores had no liability. As to Godinez and Arrow Ready, it was nothing more than a *postjudgment* order for costs and interest. The original May 3, 1999 judgment was still valid as to them (see *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583, fn. 6 [120 Cal.Rptr.2d 213]; *Winzler & Kelly v. Superior Court* (1975) 48 Cal.App.3d 385, 393 [122 Cal.Rptr. 259]).

An appeal from such judgment was taken and we affirmed it in an unpublished opinion (*Archdale v. Stinson* (Sept. 14, 2001, B135694) filed on September 14, 2001. A remittitur was issued on November 27, 2001. Prior to the filing of this action, but after AIS had rejected the Archdales' offers to settle the underlying action, AIS had entered into a settlement with another claimant, who was also involved in the multiple-vehicle accident that had caused injuries to the Archdales. Such settlement was for $142,500. This left a balance remaining on AIS's policy limit of $357,500, which amount was paid by AIS to the Archdales on April 23, 2002.

On September 12, 2003, the Archdales, Arrow Ready, and Godinez filed their complaint in this action against AIS for breach of contract and breach of the implied covenant of good faith and fair dealing.[7] Both causes of action alleged that AIS had wrongfully failed to accept multiple reasonable settlement offers to settle the Archdales' claims in the underlying action. Plaintiffs further alleged that AIS's failure to accept such settlement offers (all but one of which were within AIS's policy limits) resulted in an excess judgment against Godinez and Arrow Ready.

Plaintiffs assert (either in their complaint or in their opposition to AIS's motion for summary judgment) that several Archdale settlement offers had been submitted prior to the trial of the underlying action and prior to the time that AIS had agreed to settle with another claimant for $142,500 (which, as already noted, effectively reduced the amount of AIS's available coverage to $357,500). The first offer was allegedly made in 1996 in the amount of $500,250 and was rejected by AIS. A second offer was made in June of 1997 at a mandatory settlement conference and was in the sum of $500,000. This offer was allegedly repeated at a December 1998 mandatory settlement conference. AIS failed to accept any of these offers.[8] Plaintiffs alleged that all

---

[7] The complaint also included a third cause of action brought solely on behalf of the Archdales pursuant to the provisions of Insurance Code section 11580 subdivision (b)(2). That section provides authority for an insured's judgment creditor to bring an action directly against the insurer on a final judgment arising from conduct by the insured and covered by the liability policy issued by the insurer. It appears, however, that the Archdales have abandoned that cause of action as they do not dispute that AIS had fully paid out its policy limit prior to the filing of plaintiffs' complaint and they make no claim of error with respect to the trial court's grant of summary judgment as to that count. As we note at the conclusion of this opinion, we will affirm that portion of the trial court's judgment. (See fn. 28, *post.*) We otherwise have no need to consider or discuss plaintiffs' third cause of action.

[8] In their opposition to AIS's motion for summary judgment, plaintiffs asserted that AIS responded to their offers with an offer to permit entry of judgment against its insureds, pursuant to Code of Civil Procedure section 998, in favor of Cheryl Archdale in the sum of $32,500 and in favor of Donald Archdale in the sum of $5,000. Plaintiffs further claimed that AIS had also refused to accept oral offers to settle the underlying action during the trial of that matter.

such offers were reasonable in that Cheryl Archdale had sustained $182,000 in medical expenses and $24,000 in lost earnings.

Finally, plaintiffs assert that, prior to the date they filed their complaint (i.e., Sept. 12, 2003), Arrow Ready and Godinez had, for valuable consideration, assigned to the Archdales whatever rights they had to pursue certain insurance-related claims under the AIS policy.[9] On March 21, 2005, however, Arrow Ready voluntarily dismissed the complaint without prejudice, thus dropping out of further participation in this case. As a result, the Archdales and Godinez thereafter remained as the only plaintiffs in this action.

On April 1, 2005, AIS moved for summary judgment, arguing that all three of plaintiffs' causes of action (see fn. 7, *ante*) were barred by the applicable statutes of limitations. AIS argued that no claim could be asserted for a breach of contract because AIS had provided a defense to the underlying action and had paid out the full amount of its policy limit prior to the filing of plaintiffs' complaint and thus it had not breached the policy contract; in any event, the four-year limitations period for breach of a written contract (Code Civ. Proc., § 337, subd. 1) had commenced to run on May 3, 1999, the date of entry of the original judgment in the underlying action, and therefore had expired over four months prior to the date when plaintiffs filed their complaint (i.e., Sept. 12, 2003).

With respect to the second cause of action alleging a breach of the implied covenant of good faith and fair dealing, AIS advanced the same argument. AIS asserted that, under Code of Civil Procedure section 339, subdivision 1, such an action had to be brought within two years. AIS contended that such period had also necessarily expired long before plaintiffs' complaint had been filed.

Because the Archdales' right to pursue claims under either the first or the second cause of action of their complaint depended on the viability of the assignment of rights from Godinez,[10] AIS took Godinez's deposition on April

---

[9] See footnote 10, *post.*

[10] It should be noted that Godinez did not and, in any event, could not, as a matter of law, have assigned to the Archdales any right to recover against AIS on any claim for emotional distress or punitive damages that might have arisen from AIS's alleged breach of the implied covenant as pled in the second cause of action. These are "purely personal" claims and are not assignable. (See *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942 [132 Cal.Rptr. 424, 553 P.2d 584].) Godinez's claim for damages resulting from entry of an *excess* judgment in the underlying action, however, was assignable in exchange for a covenant not to execute on such judgment (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 732 [117 Cal.Rptr.2d 318, 41 P.3d 128]) as was his right to recover so-called *Brandt* attorney fees (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1264–1265 [45 Cal.Rptr.3d 362, 137 P.3d 192]). Other than the bare allegation in their complaint, the record in this case does not reflect

25, 2005, while its summary judgment motion was still pending. Godinez testified that he had retained his attorney (Robert Finnerty) about eight or nine months previously.[11] He stated that he *first* spoke to Finnerty in *September of 2004* and had not spoken to Finnerty or anyone from his office prior to that time. He further testified that he had signed the "assignment of action in exchange for covenant not to execute" on *October 4, 2004.* Finally, Godinez testified that he had not even known that the Archdales had obtained a judgment against him until he learned that fact from Finnerty at the time of their first meeting, that is, in September of 2004.

Based on this testimony, AIS argued that the Archdales' counsel, Girardi & Keese, did not have Godinez's authority to file this lawsuit on September 12, 2003 (at least as to the first two causes of action which depended on the proper authorization of Godinez as to his claims and upon his assignment to the Archdales as to their claims asserted in the first two causes of action). Citing Civil Code section 2313 ("[n]o unauthorized act can be made valid, retroactively, to the prejudice of third persons, without their consent . . ."), AIS argued that the present lawsuit was barred by the applicable statute of limitations. Godinez's claimed authorization and assignment to the Archdales had not occurred until a year *after* the underlying action had been filed and could not retroactively be relied upon to save claims already barred. Plaintiffs responded that this was an entirely new issue which the trial court should not consider. The court, however, decided to continue the hearing on AIS's motion to July 12, 2005, and granted AIS leave to file an amended motion encompassing the new issue raised by Godinez's testimony.

Plaintiffs sought to counter this new evidence by submission of a declaration signed by Godinez in which he stated that his deposition testimony was not correct and that he had spoken with the Girardi & Keese law firm prior to September 12, 2003, and had authorized the firm to represent him prior to that date. He also purported to change his deposition testimony (after expiration of the 45-day stipulated period for making any such change). He changed his answer to the question as to whether he had spoken to Finnerty or anyone at the Girardi & Keese law firm prior to September 2004 from "No, sir" to "Yes, sir."[12]

---

whether or not the Archdales actually obtained an assignment of rights against AIS from Arrow Ready. Moreover, none of the parties raise or argue any issue with respect to that matter. We therefore have no need to consider or discuss any issue that might otherwise have arisen as the result of such an assignment.

[11] Attorney Robert Finnerty and his firm, Girardi & Keese, were counsel for the Archdales in the underlying action.

[12] Specifically, Godinez stated in his declaration: "I have never felt I was treated properly by the insurance company and its lawyers, and I authorized and agreed to pursue a bad faith action before September 12, 2003. It is clear from my deposition I and the lawyer from the insurance company were confused and did not understand each other. Maybe it was my nerves.

The trial court heard oral argument on AIS's amended motion on August 4, 2005, and granted it. Regarding the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, the trial court concluded, based on Godinez's deposition testimony establishing that he had not spoken with Finnerty or anyone else at Girardi & Keese before September 2004, that the lawsuit was filed without Godinez's authority. Likewise, Godinez's assignment of rights to the Archdales did not occur prior to that date and, in fact, occurred on October 4, 2004. As a result, prior to that date, the Archdales could not be proper plaintiffs as to the first and second causes of action alleged in plaintiffs' complaint. The trial court found that Godinez's declaration was conclusionary and self-serving and held that it was insufficient under applicable law to contradict his sworn deposition testimony and thus failed to create a triable issue of fact as to the above described matters. The trial court concluded that the statute of limitations period had run by September 2004, and any effort by Godinez to retroactively ratify counsel's actions was ineffective to avoid that limitations bar.

Judgment was thereafter entered in favor of AIS on November 3, 2005. Plaintiffs have filed this timely appeal.

## CONTENTIONS OF THE PARTIES

Plaintiffs urge that the trial court erred when it refused to consider the Godinez declaration or to recognize the ambiguity present in his deposition testimony about the date on which he had authorized the filing of a lawsuit in his name and assigned rights to the Archdales. Moreover, even if such authorization had not taken place until September of 2004, AIS was not harmed because the four-year limitations period had not expired by that date and thus Godinez's authorization and assignment effectively ratified the filing of the action on September 12, 2003. Plaintiffs, who are all represented by the same counsel, emphasize that they seek recovery only in contract for AIS's bad faith conduct in failing to accept multiple reasonable settlement offers; and they contend that such contract claim will support recovery of the amount of the excess judgment.[13]

---

Maybe it was something else on his part. However, it cannot be said I did not authorize the filing of this bad faith suit. I corrected my deposition on June 19, 2005. I spoke with [*sic*] and authorized this suit before it was filed on September 12, 2003. The assignment of rights was reduced to its present form long after my authorization to pursue this action." It seems noteworthy that these assertions, which directly contradicted Godinez's earlier deposition testimony, were not supported by any declaration from the Girardi & Keese law firm or the presentation of relevant written documentation from their files.

[13] As we understand the appellate record, this argument can only have application to the claim asserted by the Archdales. Godinez's remaining bases for recovery, after his assignment to the Archdales, are for the nonassignable "purely personal" claims for emotional distress and punitive damages. Such a recovery, however, can only be secured in a tort action. (*Cates*

AIS disputes each of these contentions and argues that the statute of limitations on both the first and second causes of action had expired before Godinez authorized the filing of an action in his name and assigned certain of his claims against AIS to the Archdales. AIS contends that the trial court correctly ruled that Godinez was bound by his deposition testimony and properly disregarded his contradictory declaration. AIS further argues that there can be no recovery for its alleged bad faith failure to settle *except in tort* and, as to that claim, a two-year limitations period applies. If recovery by either the Archdales or Godinez is limited to a contract theory, AIS argues that such a claim would have no viability since it is undisputed that AIS had fully performed under its policy contract, including the payment of all promised policy benefits, prior to the date this action was filed.

## DISCUSSION

### 1. Standard of Review

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The pleadings define the issues to be considered on a motion for summary judgment. (*Sadlier v. Superior Court* (1986) 184 Cal.App.3d 1050, 1055 [229 Cal.Rptr. 374].) As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064–1065 [225 Cal.Rptr. 203].)" (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We review orders granting or denying a summary judgment motion de novo. (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 601 [41 Cal.Rptr.3d 686].) We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].)

---

*Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 43–44 [86 Cal.Rptr.2d 855, 980 P.2d 407].) As we explain below, not only does the applicable statute of limitations bar such a recovery, but also plaintiffs' (including Godinez) singular reliance on a contract theory of recovery constitutes an abandonment of any tort claim.

## 2. *Nature of a Liability Insurer's Duty to Accept a "Reasonable" Settlement Offer*

The essence of plaintiffs' claims is that AIS rejected multiple reasonable settlement offers to resolve the underlying action for a sum within the coverage limit of the AIS policy. Plaintiffs claim that this damaged Godinez by exposing him to the very excess judgment which in fact resulted from the underlying action.

As a liability insurer, AIS undertook certain obligations to its insured, Godinez. First, it promised to provide him with a defense to any suit brought against him seeking damages covered by the policy. In addition, AIS promised to "pay all damages" (up to the policy limit) for which Godinez became "legally obligated" to pay due to bodily injury or property damage suffered by a third party during the policy period and arising out of the use of any covered automobile. The record before us reflects that AIS fully performed these express contractual promises made by the policy. AIS provided a defense of the underlying action and, prior to the filing of this action, paid out its full policy limit on account of the judgment entered in the underlying action.

■ AIS, however, also had another obligation that was *implied.* In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198] (*Comunale*).) "[I]t is common knowledge that one of the usual methods by which an insured receives protection under a liability insurance policy is by settlement of claims without litigation; that the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; that in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives to its own interests; and that when 'there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim.' [Citation.]" (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173] (*Crisci*).) "In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer." (*Ibid.*)

■ The implied covenant of good faith and fair dealing imposes a duty on an insurer to accept a reasonable offer to settle a claim against its insured. (*Crisci, supra,* 66 Cal.2d at p. 430.) The standard for determining if a settlement offer is "reasonable" has been described in *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744] (*Johansen*). As the Supreme Court has explained, "the *only permissible consideration* in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer. Such factors as [1] the limits imposed by the policy, [2] a desire to reduce the amount of future settlements, or [3] a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one." (*Id.* at p. 16, italics added.)[14]

■ Thus, whether a liability insurer's failure to accept a settlement offer constituted a breach of the implied covenant depends on whether that settlement offer was "reasonable." The existence of a coverage dispute, however meritorious the insurer's position, is simply not a proper consideration in deciding whether to accept an offer to settle the claim against the

---

[14] It must be noted that neither *Johansen* nor this case involved, and therefore we do not address, a situation where some claims asserted against the insured are arguably covered and some are indisputably not. (See, e.g., *Camelot by the Bay Condominium Owners' Assn. v. Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 52–53 [32 Cal.Rptr.2d 354] (*Camelot by the Bay*); Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶ 12:338.) In *Camelot by the Bay*, the trial court had attempted to hold the insurer (Scottsdale) to a duty to protect its insured against a financial risk for even those construction defects that would ultimately be determined to be *uncovered* items. The court declined to read *Johansen*'s broad restatement of the *Comunale* rule, as quoted above, to so burden a liability insurer in a case where the third party claims embraced clearly uncovered risks as well as those that fell within coverage. The *Camelot by the Bay* court emphasized the language from *Comunale* that an insurer denies coverage " 'at its own risk, and . . . *if the denial is found to be wrongful* [see fn. 16, *post*] it is liable for the full amount which will compensate the insured . . . .' " (*Camelot by the Bay, supra,* 27 Cal.App.4th at p. 52.) The court thus read the *Comunale* rule to presuppose "that an insurer denies coverage at its own risk *if, and only if,* coverage is ultimately found. Essentially, there are two separate coverage questions: coverage within the monetary limits of a policy ('vertical coverage') and substantive coverage of an insurance policy ('horizontal coverage'). These two coverage questions are not readily comparable and should not be confused. We do not believe Scottsdale can reasonably be said to have run the risk of bad faith liability by refusing to settle the case for the amount demanded, where no danger of excess liability of the insured existed and where it was essentially undisputed that some of the defects at the property fell outside the scope of its policy. Where coverage up to the settlement demand is ultimately found, and an excess judgment is ultimately entered, the situation is far different from the case before us in which some of the defects were found not to be covered and there was never any threat of an excess judgment." (*Id.* at p. 53.) We leave to another case the consideration of the viability and impact of *Camelot by the Bay*'s suggested limitations on the broad principles articulated in *Comunale* and *Johansen.*

insured. The *Johansen* court has clearly described just what will constitute a "reasonable settlement offer" and *"an insurer's 'good faith,' though erroneous, belief in noncoverage [will afford] no defense to liability flowing from the insurer's refusal to accept a reasonable settlement offer."* (*Johansen, supra,* 15 Cal.3d at p. 16, italics added; see also *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 243 [178 Cal.Rptr. 343, 636 P.2d 32].)[15] In the context of an insurer that rejects a settlement offer without regard to its reasonableness, but solely on the ground of noncoverage, the *Comunale* court stated, "[a]n insurer who denies coverage *does so at its own risk, and, although its position may not have been entirely groundless,* if the denial is found to be wrongful[16] it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." (*Comunale, supra,* 50 Cal.2d at p. 660, italics added.)[17]

An insurer's liability for failing to accept a reasonable settlement offer "is imposed not for a bad faith breach of the contract but for failure to

---

[15] Such a clear rule imposes no unfair burden upon an insurer that may, in all good faith, believe that its policy provides no coverage for the claim. If the insurer rejects a settlement offer on that ground, and its coverage position is later vindicated, it will have no liability for the damages flowing from such refusal. In order to mitigate the consequences should its coverage position be ultimately rejected, an insurer may reserve its right to dispute coverage but then go ahead and accept the reasonable settlement offer so as to protect its insured against exposure to an excess judgment. Such action would preclude any claim of bad faith against the insurer in the event coverage was later established; and the insurer would have a remedy in the event that its coverage position was ultimately vindicated. "If, having reserved such rights and having accepted a reasonable offer, the insurer subsequently establishes the noncoverage of its policy, it would be free to seek reimbursement of the settlement payment from its insured." (*Johansen, supra,* 15 Cal.3d at p. 19.) We recognize that, in discussing this issue, the *Johansen* court stated that the insurer was entitled to reserve the right to assert coverage defenses pursuant to "an agreement with the insured." (*Ibid.*) The Supreme Court, however, has since recognized the validity of *unilateral* notices of reservation of coverage dispute rights in cases involving an insurer's duty to defend. (See *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 498 [106 Cal.Rptr.2d 535, 22 P.3d 313].) The rationale for permitting such reservation with respect to recovery of defense costs from an insured after a determination of noncoverage (see, e.g., *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 656, 659–660 [31 Cal.Rptr.3d 147, 115 P.3d 460]; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 50–51 [65 Cal.Rptr.2d 366, 939 P.2d 766]) would seem to apply with equal force to failure to settle cases.

[16] The Supreme Court later made it clear that its use of the term "wrongful" in this context meant "merely an erroneous denial of coverage required by the policy." (*Johansen, supra,* 15 Cal.3d at p. 16, fn. 4.)

[17] This conclusion, of course, necessarily assumes that it was a "reasonable settlement offer" that was rejected by the insurer on the grounds of noncoverage. While the insurer's good faith belief in noncoverage would be no defense to liability, an insurer rejecting a settlement offer on such a ground would still be entitled (subject to any claim of waiver) to defend an insured's action for breach of the implied covenant on the alternative ground that the rejected settlement offer was not, in fact, a "reasonable" one.

meet the duty to accept reasonable settlements, *a duty included within the implied covenant of good faith and fair dealing.*" (*Crisci, supra,* 66 Cal.2d at p. 430, italics added.) The insurer's breach of this implied obligation " 'sounds in both contract and tort.' " (*Johansen, supra,* 15 Cal.3d at p. 18.) But the scope of the duty imposed upon the insurer by the implied covenant of good faith and fair dealing does not turn on whether its breach is characterized as contractual or tortious because, in either case, the duty itself springs from the contractual relationship between the parties. (*Ibid.*) Put another way, an insurer's breach of the implied covenant of good faith and fair dealing constitutes what is commonly called "bad faith." Whether the insured's remedy will be in contract or tort will depend on the nature of the relief or recovery sought by the insured. (See fn. 19, *post.*)

■ The Supreme Court has recently summarized the consequences of the breach of such duty. "An insurer that breaches its duty of reasonable settlement is liable for all the insured's damages proximately caused by the breach, regardless of policy limits. [Citations.] Where the underlying action has proceeded to trial and a judgment in excess of the policy limits has been entered against the insured, the insurer is ordinarily liable to its insured for the entire amount of that judgment [citations], excluding any punitive damages awarded [citation]. The insured's action for breach of the contractual duty to settle may be assigned to the claimant, regardless of whether assignments are permitted by the policy. [Citation.]" (*Hamilton v. Maryland Casualty Co., supra,* 27 Cal.4th at p. 725.)

### 3. *Plaintiffs' Complaint States a Claim That Sounds in Both Contract and Tort, but Only One of Those Claims Is Viable*

Plaintiffs have alleged two causes of action, one for breach of contract and one for breach of the implied covenant of good faith and fair dealing. The first cause of action necessarily relates only to the *express* promises made by AIS in its policy, that is, to defend the underlying action and to provide indemnity to the extent of its policy limits. The record reflects, without dispute, that AIS performed both of those contractual commitments. As a result, there is no factual or legal basis for the breach of contract claim asserted in plaintiffs' first cause of action.[18] That cause of action fails even

---

[18] We note the presence of some pleading confusion in the structure of plaintiffs' complaint. The first cause of action, which was denominated as one for "breach of contract," also includes allegations relevant to the second cause of action, described as one for breach of the implied covenant. These same allegations, however, are repeated in the second cause of action. Thus, to the extent that the allegations of the first cause of action go beyond those necessary to claim a recovery for the alleged breach of express policy terms, they are superfluous and may be disregarded. We thus treat the first cause of action as one seeking a recovery for breach of the

without regard to any question as to the applicable statute of limitations. It is therefore the second cause of action, alleging a breach of the implied covenant, which presents the critical issues raised by this appeal. As we have already noted, a liability insurer's failure to accept a reasonable settlement offer constitutes a breach of that covenant and the insured's remedy "sounds in both contract and tort."[19]

The Archdales and Godinez are here effectively pursuing different remedies. Absent the assignment of rights from Godinez who, as AIS's insured, was the only party damaged by AIS's rejection of the Archdales' settlement offers, the Archdales' only viable claim would be under Insurance Code section 11580, subdivision (b)(2) (see fn. 7, *ante*, and fn. 28, *post*). That assignment granted to the Archdales only those rights that were properly assignable. Thus, the Archdales succeeded to whatever claims Godinez had against AIS, except his nonassignable "purely personal" tort claims for emotional distress and punitive damages. (See *Murphy v. Allstate Ins. Co.*, *supra*, 17 Cal.3d at p. 942.) This left the Archdales free to pursue whatever assignable contractual or tort claims that Godinez might have possessed. In the context of this appeal, the Archdales were thereby entitled to seek recovery of the total amount of their judgment (less any sums already paid). As we explain, this damage is recoverable in either contract or tort. In addition, *if the Archdales had elected to proceed in tort*, they would also have been entitled (absent any statute of limitations issue) to seek recovery of so-called *Brandt* fees under *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796]. (See *Essex Ins. Co. v. Five Star Dye House, Inc.*, *supra*, 38 Cal.4th at pp. 1264–1265.)[20] Following the assignment, Godinez was left with only his "purely personal" *tort* claims for

express contractual promise to provide policy benefits; it is the second cause of action that we view as the one claiming recovery for breach of the implied covenant of good faith and fair dealing.

[19] Unlike with any other contract (see *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 684 [254 Cal.Rptr. 211, 765 P.2d 373]), the breach of an *insurance* contract (by the insurer) of the implied covenant of good faith and fair dealing will give rise to an action in tort by the insured, as well as one in contract, at the election of the insured (or assignee). An action for recovery on either theory is what is commonly referred to as one for "bad faith." There is a significant difference, however, in the available remedies. If the insured elects to proceed in tort, recovery is possible for not only all unpaid policy benefits and other contract damages, but also extra-contractual damages such as those for emotional distress, punitive damages and attorney fees. An insured electing to proceed in tort, however, is burdened with a significantly shorter statute of limitations, as this case illustrates. If the insured (or assignee) elects to proceed only in contract, as do the Archdales in this case, then recovery is limited to those damages recoverable in contract. (See Civ. Code, § 3300.) In such case, the applicable statute of limitations, as we explain below, is four years (Code Civ. Proc., § 337, subd. 1), instead of the two-year period applicable in tort actions. (Code Civ. Proc., § 339, subd. 1.)

[20] As we read and understand *Brandt v. Superior Court, supra,* 37 Cal.3d 813, the attorney fee recovery permitted by that case is available only in an action for breach of the implied covenant of good faith and fair dealing in which the insured (or assignee) is seeking a *tort*

emotional distress and punitive damages. Thus, the Archdales and Godinez are necessarily suing to recover separate and distinct damages from AIS, even though all such damages arose from the same breach by AIS of the covenant of good faith and fair dealing that was implied in its policy contract.

### a. *The Contract Claim*

As the *Comunale* court noted, "[t]here is an important difference between the liability of an insurer who performs its obligations and that of an insurer who breaches its contract. The policy limits restrict only the amount the insurer may have to pay in the performance of the contract as compensation to a third person for personal injuries caused by the insured; they do not restrict the damages recoverable by the insured for a breach of contract by the insurer." (*Comunale, supra,* 50 Cal.2d at p. 659.) This raises the question as to whether the Archdales, as the assignees of Godinez, would be entitled to recover, on a contract theory (as opposed to tort), the full amount of the judgment to the extent that it exceeded the policy limits already paid by AIS. We answer that question in the affirmative.

In *Foley v. Interactive Data Corp., supra,* 47 Cal.3d 654, the court emphasized that a breach of the implied covenant of good faith and fair dealing was a claim founded *upon contact* and that a careful distinction must be maintained between "ex delicto" and "ex contractu" obligations. "When a court enforces the implied covenant it is in essence acting to protect 'the interest in having promises performed' [citation] . . . ." (*Id.* at pp. 689–690.) This is the traditional function of a contract action. A tort action, on the other hand, redresses the breach of the general duty to society which the law imposes without regard to the substance of the contractual obligation. "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." (*Id.* at p. 690.) In short, it is an implied-in-law term of the contract and its breach will necessarily result in a breach of the contract. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393 [272 Cal.Rptr. 387].)

---

recovery. (*Essex Ins. Co. v. Five Star Dye House, Inc., supra,* 38 Cal.4th at p. 1255.) The result in *Brandt* permits a limited recovery of attorney fees as *additional* damages arising from the tortious conduct of the insurer and is analogous to a similar recovery allowed in the so-called "tort of another" cases. (*Brandt v. Superior Court, supra,* at p. 821 (dis. opn. of Lucas, J.); see also *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 621 [30 Cal.Rptr. 821, 381 P.2d 645].)

■ Under Civil Code section 3300, the measure of damages for the breach of an obligation arising from contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." The theory behind allowing for damages in contract law is that the injured party should receive as nearly as possible the equivalent of the benefits of the contract as he or she would have received, had the performance been rendered as promised. (*Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 455 [277 Cal.Rptr. 40].) This means that recoverable damages are those that could fairly and reasonably be seen as arising naturally from a breach. (*Id.* at p. 456.) This includes those that *should have* been reasonably contemplated or foreseen in light of all of the known facts or facts that the breaching party should have known, at the time of contracting. (*Ibid.*; *Ely v. Bottini* (1960) 179 Cal.App.2d 287, 294 [3 Cal.Rptr. 756].) Thus, if the occurrence of these damages is sufficiently predictable to the parties when contracting, it can be assumed that the parties contemplated them. (*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960, 968 [22 Cal.Rptr.3d 340, 102 P.3d 257].)

California courts have repeatedly addressed this issue, and the *Hadley v. Baxendale* rule still stands: if the damages are within the reasonable expectation of the parties at the time of contracting, they are recoverable. (*Brandon & Tibbs v. George Kevorkian Accountancy Corp., supra*, 226 Cal.App.3d at p. 456; see also *Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist., supra*, 34 Cal.4th at p. 969 [citing *Hadley v. Baxendale* (1854) 56 Eng.Rep. 145 as the basis for common law rule codified in California in Civ. Code, § 3300].)

As we have already discussed, an insurer undertakes implied responsibilities when it enters into a contract with its insured. (*Comunale, supra,* 50 Cal.2d at pp. 658–659.) Thus, an insurer can be held liable for a judgment against the insured in excess of its policy limits if the insurer has breached this implied covenant by unreasonably failing to accept a settlement offer within the policy limits. (*Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 916–917 [164 Cal.Rptr. 709, 610 P.2d 1038].)

■ An insurer's failure to accept an offer of a reasonable settlement within policy limits when there is a great risk of liability in excess of the policy limits may, "in the ordinary course of things," result in a judgment against the insured beyond the policy limits. (*Comunale, supra,* 50 Cal.2d at pp. 660–661.) As such, the insured has a legitimate right to expect that "the method of settlement within policy limits" will be used to protect him or her

from liability. (*Commercial Union Assurance Companies v. Safeway Stores, Inc., supra,* 26 Cal.3d p. 918.) Since liability beyond policy limits constitutes damages that arise "naturally" from a liability insurer's failure to accept a reasonable settlement offer, such damages are foreseeable within the meaning of Civil Code section 3300. That statute allows for a recovery in such a case because it is foreseeable upon entering into an insurance contract that such a breach of the implied covenant could result in damage beyond the policy limits, and such a situation should have reasonably been contemplated when the insured and the insurer were entering into the contract.

Moreover, the Supreme Court has *directly* held that Civil Code section 3300 authorizes an insured to recover from an insurer that has failed to accept a reasonable settlement offer *the full amount of the judgment in excess of the insurer's policy limits* resulting from such failure. (*Comunale, supra,* 50 Cal.2d at p. 661.) "[T]here is no merit in [the insurer's] contention that section 3358 of the Civil Code[21] so qualifies section 3300 as to prevent such a recovery. Section 3358 provides that a person cannot recover a greater amount in damages for the breach of an obligation than he could have gained by full performance. The question is what would [the insured] have gained from the full performance of the policy contract with [the insurer]. [Citation.] If [the insurer] had performed its contract, it would have settled the action against [the insured], thereby protecting him from all liability. The allowance of a recovery in excess of the policy limits will not give the insured any additional advantage but merely place him in the same position as if the contract had been performed." (*Ibid.*)

■ Applying the foregoing principles to the factual context of this case, the entry of a judgment in excess of the policy limit was, "in the ordinary course of things," likely to result from AIS's failure to accept a reasonable settlement offer that was within its policy limits. As we already have discussed, a reasonable settlement offer exists when, in light of the nature and scope of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the offer. Here, the Archdales allegedly offered to settle on multiple occasions for a sum that was within the limit of AIS's policy.[22] The ultimate judgment was over two and a

---

[21] Civil Code section 3358 provides: "Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."

[22] This, of course, is something that the Archdales will have to prove upon remand. In order to recover, it will also be necessary for them to prove that one or more of such settlement offers were, in the context of the facts of this case, "reasonable" as that term was used by the Supreme Court in *Johansen, supra,* 15 Cal.3d at p. 16.

half times those policy limits.[23] The Archdales' economic injuries alone were $206,000. Depending on the evidence relevant to Godinez's liability that was available to AIS (a disputed factual issue), a jury might well conclude that a judgment in excess of the $500,000 offer was likely. Since that was also the limit of coverage under the policy, it follows that a judgment in excess of that policy limit might also be likely. Assuming the necessary facts are established at trial, it would certainly seem reasonable to conclude that the "likelihood" requirement of Civil Code section 3300 would be satisfied in this case and thus support a recovery *in contract* for the amount of the excess judgment entered following AIS's failure to accept a reasonable settlement offer within policy limits.[24]

The analysis of the *Crisci* court reinforces this conclusion. "Obviously, it will always be in the insured's interest to settle within the policy limits when there is any danger, however slight, of a judgment in excess of those limits. Accordingly the rejection of a settlement within the limits where there is any danger of a judgment in excess of the limits can be justified, if at all, only on the basis of interests of the insurer, and, in light of the common knowledge that settlement is one of the usual methods by which an insured receives protection under a liability policy, it may not be unreasonable for an insured who purchases a policy with limits to believe that a sum of money equal to the limits is available and will be used so as to avoid liability on his part with regard to any covered accident. In view of such expectation an insurer should not be permitted to further its own interests by rejecting opportunities to settle within the policy limits unless it is also willing to absorb losses which may result from its failure to settle." (*Crisci, supra,* 66 Cal.2d at pp. 430–431.)

We conclude that the Archdales have a viable *contract* claim for breach of the implied covenant and, subject to proof at trial, would be entitled to recover the full amount of their judgment, less any sums that they have already been paid by AIS. The relevant limitations period applicable to the Archdales' contract claim is four years. (Code Civ. Proc., § 337, subd. 1;

---

[23] As the *Crisci* court noted, "[t]he size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim." (*Crisci, supra,* 66 Cal.2d at p. 431.)

[24] We emphasize that our conclusion and its supporting analysis may not have application to an insured's effort to obtain a contract recovery for an insurer's breach of the implied covenant of good faith and fair dealing in factual contexts other than the one presented by this case (i.e., a liability insurer's failure to accept a reasonable settlement offer to resolve a claim against its insured). We do not intend, by what we say in this opinion, to express any view as to whether the principles articulated and applied in *Comunale, supra,* 50 Cal.2d 654, *Crisci, supra,* 66 Cal.2d 425, and *Johansen, supra,* 15 Cal.3d 9, should be extended or applied to a breach by an insurer of the implied covenant in a different factual context (see also fn. 14, *ante*).

*Comunale, supra,* 50 Cal.2d at p. 662.) As we explain below, their claim was filed timely and is thus not barred by the statute of limitations.

### b. *The Tort Claim*

Alternatively available to the Archdales was a claim in tort in which they could have sought to recover not only the amount of the excess judgment, but also so-called *Brandt* attorney fees.[25] (*Brandt v. Superior Court, supra,* 37 Cal.3d 813.) As already indicated, the Archdales have only sought recovery in contract. Godinez, on the other hand, is seeking to recover for emotional distress and punitive damages, the only claim remaining to him. Given the relief he seeks, however, his only remedy is in tort. (*Cates Construction, Inc. v. Talbot Partners, supra,* 21 Cal.4th at pp. 43–44.) This tort claim arises, as does the Archdales' contract claim, from AIS's alleged breach of the implied covenant of good faith and fair dealing by its failure to accept multiple reasonable settlement offers.

Godinez contends that AIS's bad faith conduct caused him to suffer extreme emotional distress, physical injuries, and personal economic injury, and constituted oppression, fraud or malice under Civil Code section 3294, entitling him to punitive damages. A bad faith action in tort against an insurer for breach of the implied covenant of good faith and fair dealing is governed by the two-year limitations period which Code of Civil Procedure section 339, subdivision 1 establishes for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing." (See *Richardson v. Allstate Ins. Co.* (1981) 117 Cal.App.3d 8, 13 [172 Cal.Rptr. 423].)

Although Godinez's only remedy is in tort, the plaintiffs' brief on appeal argues exclusively that the four-year limitations period of Code of Civil Procedure section 337, subdivision 1 applies to this complaint and asserts that the trial court committed error in applying the two-year statute of limitations for tort actions (Code Civ. Proc., § 339, subd. 1). In oral argument, however, plaintiffs' counsel stated, *for the first time,* that the second cause of action for breach of the implied covenant of good faith and fair dealing was a *tort* claim that was not barred by the two-year statute of limitations. This court, however, need not consider an issue which the briefs do not raise or discuss and which is asserted for the first time in oral argument. (*BFGC Architects*

---

[25] The attorney fee claim would be the only "tort" recovery available to the Archdales other than the amount of the excess judgment. As we have explained, the other tort remedies available to an injured insured were those damages that were personal to Godinez and could not have been assigned to the Archdales.

*Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 854 [14 Cal.Rptr.3d 721]; *Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1027, fn 2 [18 Cal.Rptr.3d 1].) Plaintiffs have thus not challenged the trial court's conclusion that the two-year statute of limitations of Code of Civil Procedure section 339, subdivision 1 barred any *tort* remedy under the second cause of action for breach of the implied covenant. We can affirm such ruling on that ground alone.

■ Moreover, even if Godinez had not waived such claim by failing to argue it in his brief, the two-year statute of limitations clearly bars his claim. As we have already described, Godinez attempted to avoid the limitations bar raised by AIS (1) by changing his deposition testimony demonstrating that the September 12, 2003 complaint filed by the Archdales' counsel had included Godinez as a plaintiff without his authority, and (2) by submitting a declaration directly contradicting such deposition testimony. The trial court properly rejected such efforts. Where a party's self-serving declarations contradict credible discovery admissions and purport to impeach that party's own prior sworn testimony, they should be disregarded. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10]; *Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1515, 1521–1522 [27 Cal.Rptr.3d 826].) Consequently, Godinez is bound by his deposition testimony that he (1) first spoke to the Archdales' attorney, Mr. Finnerty, in September 2004, (2) signed the written assignment to the Archdales on October 4, 2004, and (3) never spoke with Finnerty or with anyone at Finnerty's office before September 2004. Even if the pendency of the appeal in the underlying action equitably tolled the limitations period from the date of the May 3, 1999 judgment until the remittitur issued on November 27, 2001, the record indisputably reflects that Godinez did not authorize the filing of the complaint until *after* the two-year statutory limitations period had expired. Therefore, the relevant statute of limitations (Code Civ. Proc., § 339, subd. 1) bars his tort action.

We will therefore affirm the summary judgment in its entirety as to plaintiff Godinez. The only remaining claim that we are required to consider is that of the Archdales for a *contract* recovery under the complaint's second cause of action. We now turn to whether, as AIS argues, the applicable statute of limitations also bars that claim.

### 4. *The Archdales' Contract Claim Was Timely Filed Because the Limitations Period Was Equitably Tolled*

The question is whether the four-year limitations period of Code of Civil Procedure section 337, subdivision 1 bars the Archdales' contract claim under the second cause of action for breach of the implied covenant. Answering this

question depends on when the cause of action accrued, and whether the running of the limitations period was tolled until the finality of the underlying judgment.

### a. The Archdales' Contract Claim Accrued Upon Entry of the Judgment in Excess of Policy Limits

■■■ "Civil actions, without exception, can only be commenced within the periods prescribed in this title, *after the cause of action shall have accrued*, unless where, in special cases, a different limitation is prescribed by statute." (Code Civ. Proc., § 312, italics added.) No cause of action for breach of contract based on an insurer's failure to settle a claim exists until a judgment in excess of policy limits has been rendered against the insured. (*Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, 788–789 [84 Cal.Rptr.2d 43]; *Doser v. Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 890–891 [162 Cal.Rptr. 115].) A breach of the duty to settle within policy limits while the action is pending in the trial court presents only the *possibility* that a judgment might be rendered in excess of policy limits. Even if the insurer rejects a settlement offer within policy limits, it is not subject to liability if it successfully defends the litigation and obtains a complete defense verdict or a judgment is rendered that is below the settlement offer or within policy limits. The cause of action arises only upon entry of a judgment in excess of policy limits. (*Doser v. Middlesex Mutual Ins. Co., supra,* at pp. 891–892; see also *Hamilton v. Maryland Casualty Co., supra,* 27 Cal.4th at pp. 725–728 [until an excess judgment has been entered against the insured, or the insured has suffered some actual injury as a result of the alleged breach of the implied covenant of good faith and fair dealing, the existence of actual damage to the insured cannot be determined].)

Thus, the Archdales' contract cause of action against AIS for breach of the implied covenant accrued upon the entry of the judgment against Godinez for an amount in excess of the insurance policy limits. This conclusion, however, simply begs the more important question as to whether it would be appropriate to toll the running of the limitations period pending judgment finality. In this case, the underlying judgment in favor of the Archdales was subject to an appeal and did not become final until more than two years after it was originally entered. (See *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [63 Cal.Rptr.2d 74, 935 P.2d 781]; Code Civ. Proc., § 577.)

### b. AIS's Argument That the Judgment Was Final When Entered in the Trial Court Relies on Inapposite Authority

AIS argues that the Archdales' cause of action accrued, and the limitations period commenced to run, on the date judgment was entered against Godinez

in the trial court, May 3, 1999. Analogizing to attorney malpractice cases, AIS relies on *Laird v. Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691] (*Laird*).

In *Laird*, the plaintiff's action was dismissed for lack of prosecution. The plaintiff discharged her attorneys and filed an appeal, but later voluntarily dismissed that appeal. She then brought a legal malpractice action against the attorneys who had represented her in the underlying action. The trial court denied a defense motion for nonsuit asserting that the one-year limitations period on legal malpractice actions (Code Civ. Proc., § 340.6, subd. (a)) had commenced to run when the plaintiff's underlying action was dismissed and was *not* affected by the plaintiff's appeal. After entry of judgment for the plaintiff, defendant attorneys appealed, and the Court of Appeal reversed, holding that under Code of Civil Procedure section 340.6, subd. (a), the plaintiff had sustained actual injury on the date she discharged her attorneys. (*Laird, supra,* 2 Cal.4th at p. 610.)

The California Supreme Court affirmed the judgment of the Court of Appeal, holding that "the statute of limitations *for legal malpractice actions* commences on entry of adverse judgment or final order of dismissal." (*Laird, supra,* 2 Cal.4th at p. 615, italics added.) *Laird* found that Code of Civil Procedure section 340.6 focused "on *discovery* of the malpractice and actual injury, not success on appeal or proof of the total amount of monetary damages suffered by the former client." (*Laird,* at p. 614.) *Laird* rejected a rule that would toll the statute of limitations while plaintiff pursued an appeal. (*Id.* at p. 615.)

In part, *Laird* relied on the statement in Code of Civil Procedure section 340.6 "that '*in no event*' shall the prescriptive period be tolled except under those circumstances specified in the statute. . . . [¶] Section 340.6 and its legislative history make clear that once a client has been injured by an adverse judgment, the limitations period commences and is not tolled by filing an appeal absent continuous representation by the trial attorney." (*Laird, supra,* 2 Cal.4th at p. 618, italics added.) Both the result and the reasoning in *Laird* were specific to and dependent upon the language of the legal malpractice limitations statute, Code of Civil Procedure section 340.6.

This, of course, is the problem with AIS's reliance on *Laird.* That case applies specifically to legal malpractice actions, and reflects a legislative intent *not* to toll the running of the limitations period in those specific cases until the final judgment (absent continuous representation). Code of Civil Procedure section 337, subdivision 1 contains no comparable provision or legislative intent. *Laird* thus provides no authority for the conclusion that the limitations period on a claim such as the one before us will commence to run

upon entry of judgment in the trial court and will not be tolled by the prosecution of an appeal. To limit Code of Civil Procedure section 337, subdivision 1 in this way would be both illogical and inconsistent with existing case law.

 c. *The Limitations Period Was Equitably Tolled While the*
 *Appeal in the Underlying Action Was Pending*

As the Supreme Court made clear in *Hamilton v. Maryland Casualty Co., supra,* 27 Cal.4th 718, there can be no liability for the failure to accept a reasonable settlement offer *unless and until there is an excess judgment entered against the insured. (Id.* at pp. 725–728; see also *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 13 [68 Cal.Rptr.2d 837].) An insured's cause of action for breach of the implied covenant may accrue on the entry of the trial court's judgment, but, as we explain below, the limitations period should not commence to run until that judgment becomes final. Until such judgment is final, the insured has either not been harmed (*Hamilton v. Maryland Casualty Co., supra,* 27 Cal.4th at pp. 725–728)[26] or the amount of that harm cannot be determined. (*Ibid.*)

 Equitable tolling has been most often applied when a plaintiff first files a claim with an administrative agency and later files a second proceeding in court after the limitations period has expired. "Under these circumstances, courts have held the policy underlying the statute of limitations—prompt notice to permit complete and adequate defense—has been satisfied and that the period should be tolled in equity to preserve the plaintiff's claim." (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 690 [274 Cal.Rptr. 387, 798 P.2d 1230].) "[T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370–371 [2 Cal.Rptr.3d 655, 73 P.3d 517].)

---

[26] This conclusion assumes that the insurer is continuing to defend the insured and is prosecuting the appeal, and, as a part of that defense, has provided a bond to protect the insured from any execution on the judgment. We express no opinion as to whether a different analysis might be required where the insurer had refused to provide a defense or had failed to provide a bond or otherwise protect the insured, pending judgment finality, from the consequences of an excess judgment resulting from the insurer's failure to accept a reasonable settlement offer. In that circumstance, the insured would be exposed to the immediate risk of execution proceedings in the absence of a covenant to the contrary from the successful third party claimant. In this case, however, AIS did provide a defense and presumably bonded the judgment entered against Godinez. No claim or argument is made to the contrary.

*Prudential-LMI* extended equitable tolling to a situation in which the plaintiff insureds had notified their insurer of their first party loss in December 1985, sued the insurer in August 1987, and received an unequivocal written denial of coverage in September 1987. (*Prudential-LMI Com. Insurance v. Superior Court, supra,* 51 Cal.3d at p. 680, 692.) *Prudential-LMI* held that the applicable one-year contractual limitations period should be equitably tolled from the time the insured filed a timely notice, pursuant to policy notice provisions, until the time the insurer formally denied the claim in writing. (*Id.* at pp. 678, 693.)

Another and more directly relevant application of equitable tolling occurred in *Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072 [282 Cal.Rptr. 445, 811 P.2d 737]. There, an insured sued his title insurer after that insurer had denied coverage and refused to defend the insured in an underlying suit that claimed an easement by implication over the insured's property and sought reformation of a recorded easement. After the insured successfully defended the suit and obtained a judgment in his favor, he then sued the title insurer for wrongful refusal to defend. The trial court found that the statute of limitations barred all causes of action and dismissed Lambert's case. The Court of Appeal affirmed, holding that the insured's cause of action for failure to defend had accrued when the title insurer rejected his claim, more than two years before he had commenced his suit, and was thus barred under Code of Civil Procedure section 339, subdivision 1.[27] The California Supreme Court granted review to decide when a cause of action against a title insurer based on an alleged failure to defend was barred under Code of Civil Procedure section 339, subdivision 1. (*Lambert v. Commonwealth Land Title Ins. Co., supra,* 53 Cal.3d at pp. 1074–1075.)

*Lambert* stated that, generally, the duty to defend under a liability policy arises on tender of the defense and continues until the underlying lawsuit is concluded. "Because the underlying litigation may take over two years (as in this case), the *Central Bank* rule [(the limitations period commences when the cause of action accrues, i.e., when the insurer rejects tender of the defense)] would allow expiration of the statute of limitations on a lawsuit to vindicate the duty to defend even before the duty itself expires. This grim result is untenable. The insured must be allowed the *option* of waiting until the duty to defend has expired before filing suit to vindicate that duty." (*Lambert v. Commonwealth Land Title Ins. Co., supra,* 53 Cal.3d at p. 1077, italics added.) *Lambert* stated that the duty to defend was a continuing duty, and

---

[27] Code of Civil Procedure, section 339, subdivision 1 provides for a two-year limitations period for actions involving a title insurance policy, and states that such a cause of action on a title insurance policy "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."

where a continuing duty was breached the plaintiff could file suit when the time for complete performance had passed. (*Id.* at pp. 1078–1079.) "It is equitable and consistent with the legislative intent to toll the limitations period in which this duty continues from the date of accrual of a cause of action to final judgment." (*Id.* at p. 1079.) *Lambert* therefore held "that the limitation period for an action under a title insurance policy for failure to defend accrues when the insurer refuses the insured's tender of defense, but is tolled until the underlying action is terminated by final judgment." (*Id.* at p. 1080.) Thus, under *Lambert*, a plaintiff could commence an action when the insurer rejected tender of the defense, *but was not required to do so*, and could wait until the duty to defend expired before filing suit to vindicate that duty. (*Eaton Hydraulics Inc. v. Continental Casualty Co.* (2005) 132 Cal.App.4th 966, 973–974 [34 Cal.Rptr.3d 91].) In our view, a similar conclusion should be reached in this case on the grounds of fairness and common sense.

As we have already noted, a liability insurer's duty to accept a reasonable settlement offer causes no damage to the insured until entry of an excess judgment. An insured's cause of action may accrue at that time, but the resulting damages cannot be certain until the judgment is final or the time in which to appeal has passed. This is so because if the insured appeals a trial court judgment in favor of a third party claimant for damages that exceed the insurer's policy limit, that appeal may result in a reversal of the judgment against the insured, or a modification of the judgment that reduces damages to an amount below the policy limit. Thus, until the judgment is final it cannot be determined with certainty whether, and in what amount, the insured has been harmed. (*Hamilton v. Maryland Casualty Co., supra,* 27 Cal.4th at pp. 725–728.) As a result, the limitations period necessarily should be immediately tolled until the finality of the excess judgment. We therefore hold that while an insured might file an action for breach of the implied covenant upon *entry* of the excess judgment, the insured also is entitled to await *finality* before bringing his action and, pending such finality, the running of the limitations period is tolled.

The soundness of such a rule is certainly confirmed by its application in this case. Here, the appeal of the underlying action prosecuted by AIS on behalf of Godinez and Arrow Ready involved the argument that there was not sufficient evidence to support the jury's allocation of no fault to a codefendant, not a party to this action. Had AIS prevailed on that claim, the judgment would have been reversed, and a retrial could have potentially altered the jury's comparative negligence finding so as to reduce the liability of Godinez and Arrow Ready to the policy limit, or to a figure below that limit, or to zero. AIS also argued, on behalf of its insureds, that admission of evidence that Arrow Ready and Godinez were insured was reversible error and that, in addition, instructional error had occurred. Reversal on either of these grounds

could have resulted in vacation of the judgment and a new trial. These common realities of the legal process certainly provide a practical justification for a tolling of the limitations period pending judgment finality. Indeed, we can think of no rationale for requiring an insured to file an action for bad faith against the insurer while it is still litigating on the insured's behalf the validity of the very judgment that necessarily must serve as the basis for the insured's claim of damages in that bad faith action.

 The required finality of the excess judgment in the underlying action does not occur until the appeal from the underlying judgment has been finally concluded and a remittitur issued or the time within which to appeal has passed. The basic rule is that while an appeal is pending, a judgment is not final. (*McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282, 286 [19 Cal.Rptr.2d 286].) This is because "a judgment does not become final so long as the action in which it was rendered is pending and an action is deemed pending until it is finally determined on appeal or until the time for appeal has passed. The determination of the issue in the case is held in abeyance until the appeal is finally decided by an appellate court and the appeal operates to ' "keep alive the case . . . as it existed before the judgment was rendered." ' " (*Id.* at p. 288.) An appeal is final on the date remittitur issues. (*Hoover v. Galbraith* (1972) 7 Cal.3d 519, 525–526 [102 Cal.Rptr. 733, 498 P.2d 981]; *Cory v. Poway Unified School Dist.* (1983) 147 Cal.App.3d 1158, 1165 [195 Cal.Rptr. 586]; *Macedo v. Bosio* (2001) 86 Cal.App.4th 1044, 1051, fn. 5 [104 Cal.Rptr.2d 1].)

We therefore conclude that the four-year statutory limitations period for the *contract* action presented by the Archdales (based on their second cause of action) was equitably tolled from the filing of the original judgment on May 3, 1999, until the remittitur issued on November 27, 2001. Thus, the filing of the complaint alleging the Archdales' contract claim on September 12, 2003, was not barred by the four-year limitations period. (Civ. Code, § 337, subd. 1.) The Archdales had until November 27, 2005, to file their complaint.

> 5. *With Respect to the Archdales' Contract Claim, Godinez's Retroactive Ratification of the Filing of this Action and Assignment of Rights Were Effective and Not Prohibited by Civil Code section 2313*

The trial court's order granting a summary judgment in favor of AIS found that Godinez's deposition testimony that he had not spoken with counsel Finnerty or with anyone at Girardi & Keese before September of 2004 necessarily resulted in the complaint, filed on September 13, 2003, to have

been without authorization. Similarly, the filing of the Archdales' complaint also preceded the actual assignment of rights to them. The trial court further found that the earliest possible date such authority could have been given to Archdales' counsel was September 2004, and because the statute of limitations had run by that date, it concluded that the law prohibited Godinez's effort to retroactively ratify the filing of the action in which he and his ultimate assignees were named as plaintiffs.

Civil Code section 2313 states: "No unauthorized act can be made valid, retroactively, to the prejudice of third persons, without their consent." Had the statutory limitations period ended before Godinez had ratified the earlier filing of the complaint, or assigned rights to the Archdales so that they could properly pursue the claim against AIS in their own name, his retroactive attempt to do so *after* the running of the limitations period would have prejudiced AIS by depriving it of that defense. (See *Dominguez v. Superior Court* (1983) 139 Cal.App.3d 692, 695 [189 Cal.Rptr. 5].) However, our conclusion that the four-year limitations period applied to the Archdales' contract claim on the second cause of action and that the running of that limitations period was tolled until November 27, 2001, means that AIS did not yet have a statutory limitations defense when the complaint was filed on September 13, 2003, nor when Godinez ratified its filing in September of 2004, or when he made his assignment of rights to the Archdales on October 4, 2004. Therefore, retroactive authorization of the filing of the complaint and the retroactive assignment of rights to the Archdales did not prejudice AIS by depriving it of this defense and thus was *not* prohibited by Civil Code section 2313.

### DISPOSITION

As to the plaintiffs Archdale, the judgment is affirmed as to the first and third causes of action[28] in the complaint but is reversed as to the second cause of action. As to the plaintiff Godinez, the judgment is affirmed in its entirety. Upon remand, the trial court shall conduct such further proceedings

---

[28] The Archdales' third cause of action was for recovery under Insurance Code section 11580, subdivision (b)(2). (See fn. 7, *ante.*) Such cause of action was one brought directly against AIS on the judgment entered against AIS's insured; recovery, however, is restricted to the policy limits. (*Murphy v. Allstate Ins. Co., supra,* 17 Cal.3d at pp. 943–944; *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386 [100 Cal.Rptr.2d 807].) As the record reflects that the policy limits were fully paid out prior to the filing of this action, the third cause of action fails for the same reason as the first cause of action. The Archdales do not contend otherwise.

as may be appropriate and not inconsistent with the views expressed herein. The parties shall bear their own costs on appeal.

Klein, P. J., and Kitching, J., concurred.