558 F.2d 1313
 L. M. McADOO, Vanita M. Byars, as Executrix of the Estate of
Clarence C. Byars, Deceased, and Great Oil Basin
Securities Corporation, Appellants,
v.
UNION NATIONAL BANK OF LITTLE ROCK, ARKANSAS, Appellee.
 No. 76-2012.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1977.
Decided July 7, 1977.
Rehearing and Rehearing En Banc Denied Aug. 25, 1977.
 
 Edward R. Smith, Lubbock, Tex., for appellant; Dean Carlton, Dallas, Tex., on brief.
 Lucius D. Bunton, Odessa, Tex., for appellee; Griffin Smith, Little Rock, Ark., on brief.
 Before LAY and HENLEY, Circuit Judges, and NANGLE, District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This case, which has had a tortured procedural history in two federal district courts, comes to us for the second time from the United States District Court for the Eastern District of Arkansas.[1] In connection with the first appeal we affirmed the judgment of the district court in favor of appellee, Union National Bank of Little Rock, Arkansas, and against appellant Great Oil Basin Securities Corporation. That judgment established that a $500,000.00 note secured by a deed of trust on a certain shopping center in the City of Odessa, Ector County, Texas, was not tainted with usury under Arkansas law, and that the agents of Great Oil Basin who had executed the note and deed of trust had acted within the scope of their real or apparent authority. However, we remanded the case to the district court for consideration of certain post-trial motions filed by both sides which had not been considered by the district court prior to the rendition of its judgment. McAdoo v. Union National Bank of Little Rock, Ark., 535 F.2d 1050 (8th Cir. 1976).[2]
 
 
 2
 Following the remand, Judge Benson on July 28, 1976 entered an order overruling the post-trial motions of the plaintiffs and transferring the case to the Northern District of Texas to the end that the Bank might secure judicial foreclosure of its deed of trust on the Ector County shopping center. The transfer of the case to the Northern District of Texas was prompted by the mistaken idea not only of the district court but also of this court and of counsel for the Bank that Ector County is located in the Northern District of Texas, whereas in fact it is located in the Western District of Texas.
 
 
 3
 While the case was in the Northern District of Texas, plaintiffs filed a motion to amend the order entered by Judge Benson on July 28. However, on September 21, 1976 District Judge Halbert O. Woodward entered an order determining that he had no authority to amend Judge Benson's order or to order any foreclosure on lands located in another district, and he accordingly sent the case back to the Eastern District of Arkansas.
 
 
 4
 On November 15, 1976 Judge Benson entered an order overruling plaintiffs' motion to amend the July 28 order and declaring that the Bank was entitled nunc pro tunc to have the relief granted to it expanded so as to adjudicate that it is entitled to judicial foreclosure of its deed of trust and that the case should be transferred to the Western District of Texas for the implementation of the foreclosure. On the same day the district court entered a judgment nunc pro tunc, which speaks as of February 27, 1975. That judgment adjudged and decreed, as had the original judgment, that the note in question is a valid obligation of Great Oil Basin. The judgment also fixed the amount due on the note as of February 27, 1975 as being $386,544.16 and fixed the amount of accrued interest as of the date of the nunc pro tunc judgment as being $33,340.27.
 
 
 5
 The judgment further decreed that the deed of trust securing the note was a valid first lien on the Ector County, Texas property, and that the Bank was entitled to judicial foreclosure of the deed of trust.
 
 
 6
 Plaintiffs have appealed from that nunc pro tunc judgment and from the order of the district court entered on the same day. For reversal plaintiffs contend that the district court had no authority to order a judicial foreclosure of a deed of trust on Texas lands; that the district court had no authority to transfer the case to Texas under the provisions of 28 U.S.C. § 1404(a); and that the nunc pro tunc judgment was improperly entered whether it be regarded strictly as a nunc pro tunc judgment or whether it be regarded as an order granting relief from judgment pursuant to Fed.R.Civ.P. 60(b).
 
 
 7
 The facts of the case and much of its procedural history are set out in our original opinion and need not be restated here in any detail. We have given careful consideration to the contentions of the plaintiffs, and we are convinced that the district court did not err either in 1975 or 1976 in determining that the Great Oil Basin note is a legal and binding obligation of that company and that it is secured by a valid deed of trust on the shopping center in Odessa. We are also satisfied that no error was committed by the district court in 1976 in determining in terms of dollars and cents the amount of Great Oil Basin's obligation, and in decreeing that as of February 27, 1975 the Bank was entitled to judicial foreclosure of its deed of trust in Texas. The district court recognized, and properly we think, that it had no authority to actually order a judicial sale of the Texas property, and it did not purport to do so.
 
 
 8
 As we characterize the situation, the Bank now holds a valid in personam declaratory judgment against Great Oil Basin. It appears that the judgment may be valueless to the Bank unless it can bring about the sale of the shopping center which will require judicial foreclosure, and judicial foreclosure will require additional proceedings in Texas.
 
 
 9
 The purpose of that part of the final order and judgment of the district court which transferred the case to the Western District of Texas was to enable the Bank to conduct necessary proceedings in Texas within the framework of this particular piece of litigation.
 
 
 10
 In the course of our original opinion we suggested consideration of the possible transfer of the case to Texas for foreclosure purposes, but we did not have before us the question of the power of the district court to order such a transfer, and we did not undertake to decide it. That question is now before us, and we think that it presents the only serious question in the case and the only one that requires discussion.
 
 
 11
 Neither side has questioned the power of this court to review the propriety of the transfer ordered by the district court, and since the transfer order was part of the final disposition made of the case by that court, we are of the opinion that the question is open to our consideration. 15 Wright, Miller, Cooper, Federal Practice & Procedure § 3855, pp. 301-02.
 
 
 12
 The only basis for a transfer of the case to the Western District of Texas is 28 U.S.C. § 1404(a) which provides that for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. The question, then, is whether this suit could have been brought against the Bank in the Western District of Texas.
 
 
 13
 The status of a district as one in which the suit "might have been brought" does not depend upon the willingness of the defendant to be sued there or to waive objections as to venue and amenability to personal jurisdiction; nor is that status supplied by the fact that the defendant has requested the transfer. A district is one in which the suit "might have been brought," if, but only if, it is a district in which the plaintiff had a right to bring and maintain the action against the defendant without regard to the defendant's wishes or consent. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); 15 Wright, Miller, Cooper, supra, § 3845. Thus, the propriety of the transfer of this case to the Western District of Texas is not established by the fact that the Bank would now like to see it transferred there.
 
 
 14
 As its name implies, the Bank is a national bank which is established in the City of Little Rock, Arkansas. Hence, under the provisions of 12 U.S.C. § 94, transitory actions against it could have been brought only in the Eastern District of Arkansas; § 94, however, does not apply to "local" actions. Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880); Chateau Lafayette Apartments, Inc. v. Meadow Brook Nat'l Bank, 416 F.2d 301 (5th Cir. 1969).
 
 
 15
 In seeking to uphold the action of the district court in transferring the case to the Western District of Texas, the Bank, ignoring the original nature of the suit that was commenced by Mr. McAdoo and Mr. Byars in the Northern District of Texas in 1970,[3] and ignoring the procedural snarls that have developed in the case between the commencement of the action and rendition of the district court's original judgment in 1975, contends that the "suit" which is relevant here for § 1404(a) purposes is simply the controversy between Great Oil Basin and the Bank based on the former's contention that the Bank's note was usurious and that the note and deed of trust were executed by persons who had no right to execute them on behalf of the corporation. Proceeding from that definition, the Bank argues that Great Oil Basin could have filed a suit against the Bank in the Western District of Texas seeking an invalidation of the note and deed of trust, and that the action would have been local in nature and not covered by 12 U.S.C. § 94.
 
 
 16
 It is not clear to us whether the term "civil action" as used in § 1404(a) refers and is limited to the original suit filed by a plaintiff or whether it is broad enough to extend to a particular issue between particular parties which arises as the original case develops and which, if sued upon alone, might have been brought in some other district. The controversy between the Bank and Great Oil Basin with which we are concerned closely resembles what, in earlier years and in the context of removal of causes, was commonly called a "separable controversy" or a "suit within a suit."
 
 
 17
 However, the view that we take of the case enables us to accept the Bank's definition that has been stated.
 
 
 18
 Where a debtor brings a suit against a secured creditor seeking to invalidate the obligation or to secure other relief with respect to it, his suit may be deemed transitory under governing local law or it may be considered to be a local action, and its characterization depends primarily on the nature of the relief sought. In determining whether the action is transitory or local, regard is to be had to the relief actually sought by the debtor and not to some other relief which he might have sought. Chateau Lafayette Apartments, Inc. v. Meadow Brook Nat'l Bank, supra, 416 F.2d at 304-05.
 
 
 19
 We may concede to the Bank that Great Oil Basin might have filed a suit against the Bank in Ector County, Texas and might have sought such relief as would have made the action local in nature, in which case the Bank would have had to defend the case in Texas. We may also concede that if Great Oil Basin had sued the Bank in the Eastern District of Arkansas and had sought such relief as would have made the suit local to Texas, the district court, acting as provided by 28 U.S.C. § 1406(a), might either have dismissed the complaint or transferred it to the Western District of Texas.
 
 
 20
 The difficulty with the Bank's position is that neither of those things happened. The relief sought by Great Oil Basin against the Bank was nothing more than a declaration that the note and the deed of trust securing it were void for usury and for lack of authority on the part of the corporate agents executing those instruments. A suit seeking such relief is transitory in nature, and the case was submitted to the jury on that basis. At no time prior to the entry of the district court's 1975 judgment was it suggested that the relief sought by Great Oil Basin against the Bank was other than in personam, or that Great Oil Basin's claim against the Bank amounted to a local action cognizable only in Texas courts.
 
 
 21
 We think that if Great Oil Basin's claim had been advanced in the District Court for the Western District of Texas and had the Bank invoked 12 U.S.C. § 94, its position would have been sustained. That it might have waived the privilege is speculative and is beside the point as far as the transferability of this case is concerned.
 
 
 22
 In our view the suit, even as defined by the Bank, could not have been brought in the Western District of Texas, and it was error for the district court to transfer it there.
 
 
 23
 As we see it, the situation of the Bank is that it has a valid in personam declaratory judgment which establishes, among other things, that as of February 27, 1975 it was entitled to a judicial foreclosure of its deed of trust in the Western District of Texas. If the Bank desires to proceed further, it will have to institute proceedings of its own in Texas. If it does so, it will be up to the Texas courts to determine whether as of the time of the commencement of those proceedings the Bank is entitled to foreclosure and what issues are still open for litigation between the parties.
 
 
 24
 To the extent that the district court's order of November 15, 1976 directed transfer of the case to the Western District of Texas, it is reversed and vacated. In all other respects that order and the district court's nunc pro tunc judgment entered on November 15, 1976 are affirmed.[4]
 
 
 25
 Affirmed in part, reversed and vacated in part.
 
 
 
 *
 The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Paul Benson, Chief United States District Judge, District of North Dakota, sitting by designation. As will be seen, Judge Benson presided at the original trial and continued to exercise jurisdiction with respect to the case following the disposition of the first appeal
 
 
 [2]
 The litigation had been commenced originally in the Lubbock Division of the Northern District of Texas by L. M. McAdoo and the late Clarence C. Byars as a stockholders' derivative action in which Great Oil Basin, the corporation principally involved, was named as a nominal defendant. The Bank was brought into the case as a third party defendant by Ivan A. Ezrine who was one of the actual and principal defendants. Thereafter, the entire case was transferred to the Eastern District of Arkansas pursuant to 28 U.S.C. § 1404(a). The only apparent reason for the transfer was that the Bank had moved to dismiss the case as to it on the basis of the special venue provision appearing in 12 U.S.C. § 94
 
 
 [3]
 The original complaint in which the Bank was not named as a defendant and Ezrine's third party complaint against the Bank were based on alleged violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., and of Rule X10(b)-5 of the Securities & Exchange Commission, 17 CFR § 240.10b-5. Jurisdiction was based on the Act and venue was laid under the provisions of 15 U.S.C. § 78aa. Jurisdiction has never been based on diversity of citizenship, and the general venue provisions of 28 U.S.C. § 1391 are not applicable to the case. While venue as to all of the defendants, except the Bank, could have been laid in either the Northern or Western Districts of Texas, the original suit could not have been maintained against the Bank in either of those districts without the Bank's consent or waiver of privilege. Radzanower v. Touche Ross & Co., 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)
 
 
 [4]
 The district court declined to stay its order and judgment pending appeal. We have been advised by the Clerk of the District Court that the file in the case has been transferred physically to the Clerk of the United States District Court for the Western District of Texas. In view of our holding that the transfer was improperly ordered, we presume that the file will be returned in due course to the Clerk of the Arkansas District Court. In any event, proceedings in the case in the Eastern District of Arkansas have run their course