Juniaty PRAWOTO, an individual,
Plaintiff,

v.

PRIMELENDING a Texas corporation;
and Does 1–10, inclusive,
Defendants.

Case No. CV 09–06631 MMM (SSx).

United States District Court,
C.D. California.

May 4, 2010.

Timothy Douglas Thurman, Trinity Law Associates Inc., Los Angeles, CA, for Plaintiff.

Allen L. Michel, Arthur I. Willner, Rachel M. Stilwell, Gladstone Michel Weisberg Willner & Sloane, ALC, Marina Del Rey, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER; DENYING MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

On July 31, 2009, plaintiff Juniaty Prawoto commenced this action in Los Angeles Superior Court against defendant PrimeLending, a Plains Capital Company ("PrimeLending"), and certain fictitious defendants, alleging, *inter alia*, multiple state and federal violations in connection with a mortgage loan PrimeLending made to Prawoto in connection with an investment property located in Oak Point, Texas.[1] On September 11, 2009, PrimeLending timely removed the action to federal court.[2] Five days after removal, PrimeLending moved to dismiss the case for lack of subject matter jurisdiction or improper venue. In the alternative, PrimeLending sought to have the court transfer venue to the Eastern District of Texas.[3] Prawoto has not opposed PrimeLending's motion,

---

1. Complaint, attached as Exhibit to Notice of Removal, Docket No. 1 (Sept. 11, 2009).

2. Notice of Removal, Docket No. 1 (Sept. 11, 2009).

3. Notice of Motion and Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction or, in the Alternative, to Transfer for Improper Venue or, in the Alternative, to Transfer Venue for Convenience ("Motion"), Docket No. 4 (Sept. 16, 2009).

despite the fact that on October 14, 2009, defense counsel wrote plaintiff's attorney, noting that no opposition had been filed and asking that plaintiff's counsel advise the court if his client did not oppose the motion.[4]

The court delayed its decision of the motion because, on November 3, 2009, plaintiff's lawyer, Timothy Thurman, was suspended by the State Bar of California. Because plaintiffs' counsel had filed no pleadings and made no appearance subsequent to removal of the action to federal court, the court was concerned that plaintiff was unaware of the status of the action. In January 2010, the court obtained a mailing address for plaintiff and sent a notice regarding the case to that address. The notice asked that plaintiff advise the court by February 8, 2010 if she had received notice. To date, the court has received no response from plaintiff.

## I. THE LOCAL ACTION DOCTRINE

### A. Whether Plaintiff's Action Is Properly Filed in the Central District of California

■ A party wishing to challenge venue may file a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406, which provides that a district court shall dismiss or transfer a case if venue is improper. Venue in federal courts is governed entirely by statute. See *Leroy v. Great Western United Corp.*, 443 U.S. 173, 181, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). If the court finds that the case has been filed "in the wrong division or district," it must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

■ On a motion to dismiss for improper venue, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider National, Inc.*, 349 F.3d 1224, 1229 (9th Cir.2003) (citation omitted). Plaintiff bears the burden of showing that venue is proper in this district. See *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California").

■ Section 1406, however, applies only to "transitory" actions, however; different rules apply to "local" actions. 14D Charles D. Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE AND

---

4. Defendant's Notice to Court of Plaintiff's Failure to File Opposition to Defendant's Motion to Dismiss and/or to Transfer Venue, Docket No. 12 (Oct. 16, 2009). Local Rule 7–12 provides that "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." CA CD L.R. 7–12. Because plaintiff failed to file opposition by the date set forth in the court's advance briefing order or in the Local Rules, the court could, under Rule 7–12, grant defendants' motion on this basis alone. See *Cortez v. Hubbard*, No. CV 07–4556–GHK (MAN), 2008 WL 2156733, *1 (C.D.Cal. May 18, 2008) ("Petitioner has not filed an [o]pposition to the [m]otion and has not requested any further extension of time to do so. Pur-

suant to Local Rule 7–12, her failure to do so could be deemed to be consent to a grant of the [m]otion"); *Mack–University LLC v. Halstead*, No. SA CV 07–393 DOC (ANx), 2007 WL 4458823, *4 n. 4 (C.D.Cal. Sept. 25, 2007) (where a party "failed to oppose or in any way respond" to a motion, the court held that "[p]ursuant to local Rule 7–12, the [c]ourt could grant [p]laintiffs' [m]otion on this ground alone"); *Ferrin v. Bias*, No. ED CV 02–535 RT (SGLx), 2003 WL 25588274, *1 n. 1 (C. D.Cal. Jan. 2, 2003) ("Under Local Rule 7–12, failure to file an opposition may be deemed consent to the granting of the motion"). Because of the unusual circumstances surrounding plaintiff's representation, however, the court reviews the merits of defendant's motion.

Procedure, § 3822 (2009). Consequently, plaintiff bears the burden of demonstrating either that the action is not local in nature, or that it is local and filed in the correct venue. "The local action doctrine is a relic of English common law imported into this country by" Chief Justice Marshall while sitting as a circuit judge in *Livingston v. Jefferson,* 15 Fed.Cas. 660 (C.C.D.Va.1811) (No. 8,411). It is not frequently invoked by the courts. *Bigio v. Coca–Cola Co.,* 239 F.3d 440, 450 (2d Cir. 2000). *Livingston* concerned private land seized by the federal government. President Thomas Jefferson believed that land on the Mississippi River in New Orleans belonged to the federal government; in fact, Edward Livingston held title to the land. After Jefferson's presidency ended, Livingston sued Jefferson for trespass in federal court in Virginia where Jefferson resided. *Livingston,* 15 Fed.Cas. at 663.

Chief Justice Marshall reviewed the history of distinguishing between local and transitory actions. He noted that "originally all actions were local" in that they had to be tried before a jury within the same geographic subdivision, such as a county, where the facts giving rise to the claim had taken place. Chief Justice Marshall related, however, that over time, the courts of England had exercised their power to direct a jury to every part of the kingdom, and that, as a result, English courts had created the legal fiction that the only relevant geographic subdivision was England itself. Employing this fiction, they held that so long as the transaction giving rise to the action took place within the realm, it could be heard by any court in the country. Chief Justice Marshall noted that this legal fiction was used for "all personal torts, and . . . all contracts wherever executed," but that it had

not been applied to causes of action regarding land where "investigation of title [might] become necessary" or a "question of boundary [might] arise, and a survey [might] be essential to the full merits of the cause." *Id.* at 663–64.

Chief Justice Marshall thus endorsed the concept of local action venue even though the Judiciary Act of 1789 included no provision implementing it. To this day, in fact, there is no federal law of general application fixing the venue of local actions. "Thus, this concept imported from the common law now is established firmly in our jurisprudence and the [*Livingston*] case makes it as clear as anything can be that this distinction exists and that local actions can be brought only where the property involved in the action is located." 14D Wright, Miller, & Cooper, § 3822.[5] "The local action rule is so fundamental that state courts are not obligated to give full faith and credit to judgments from either federal or state courts sitting outside the local state's territorial boundaries." *Hayes v. Gulf Oil Corp.,* 821 F.2d 285, 287 (5th Cir.1987). The Supreme Court has held, moreover, not only that the local action doctrine applies where no other venue provision exists, but that it supersedes statutory venue provisions unless Congress expresses in clearest terms its intent that the statutes will take precedence.

In *Casey v. Adams,* 102 U.S. 66, 26 L.Ed. 52 (1880), for example, the Court held that even a special venue statute that sharply restricted the choice of venue in suits against national banks did not apply to a local action, and that an action within the scope of the statute could be brought only where the property was located:

"The distinction between local and transitory actions is as old as actions them-

---

**5.** 28 U.S.C. § 1392 holds that "[a]ny civil action, of a local nature, involving property located in different districts in the same State, may be brought in any of such districts." The statute does not define what an action of a local nature is, however.

selves, and no one has ever supposed that laws which prescribed generally where one should be sued, included such suits as were local in their character, either by statute or the common law, unless it was expressly so declared. Local actions are in the nature of suits *in rem*, and are to be prosecuted where the thing on which they are founded is situated. To give the act of Congress the construction now contended for would be in effect to declare that a national bank could not be sued at all in a local action where the thing about which the suit was brought was not in the judicial district of the United States within which the bank was located. Such a result could never have been contemplated by Congress." *Id.* 67–68.

See also *Mason v. United States*, 260 U.S. 545, 558, 43 S.Ct. 200, 67 L.Ed. 396 (1923) ("Here, while the suit is one in equity, the statute and decisions relied upon have nothing to do with the general principles of equity or with federal equity jurisdiction, but simply establish a measure of damages applicable alike to actions at law and suits in equity. The case presented by the bills is primarily one involving title to land and seeking an injunction against continuing trespasses. The conversion of the oil, for which damages are sought, is incidental and dependent. The entire cause of action is therefore local"); *Collett v. Adams*, 249 U.S. 545, 550, 39 S.Ct. 372, 63 L.Ed. 764 (1919) (holding that the venue provisions of the Bankruptcy Act were superseded by the local action doctrine); *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 107, 15 S.Ct. 771, 39 L.Ed. 913 (1895) ("By the law of England, and of those states of the Union whose jurisprudence is based upon the common law, an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies").

In 1914, the Ninth Circuit considered a case concerning a nuisance on Sand Island, which sits at the mouth of the Columbia River between Washington and Oregon. *Columbia River Packers' Association v. McGowan*, 219 F. 365 (9th Cir.1914). Although originally thought to be in Washington, while the case was pending before the federal district court in that state, the Supreme Court decided in a separate action that Sand Island was in fact part of Oregon. Thereafter, plaintiff filed a motion to dismiss the action for lack of subject matter jurisdiction, which the district court denied. On appeal, the Ninth Circuit reversed. *Id.* at 377 ("On the other hand, where the suit is strictly local, the subject-matter is specific property, and the relief when granted is such that it must act directly upon the subject-matter, and not upon the person of the defendant the jurisdiction must be exercised in the state where the subject-matter is situated"). See also *United States v. Byrne*, 291 F.3d 1056, 1060 (9th Cir.2002) ("The federal district courts' jurisdiction over actions concerning real property is generally coterminous with the states' political boundaries"). Given the decision in *McGowan*, courts in this circuit treat the local action doctrine as foreclosing subject matter jurisdiction where it applies.[6]

---

**6.** Although at least one federal court has treated the local action doctrine as a question of venue, see *Fisher v. Virginia Electric & Power Co.*, 243 F.Supp.2d 538, 557 (E.D.Va. 2003) (concluding that the local action doctrine affects venue, not subject matter jurisdiction, but describing the issue as an "unsettled question"), *McGowan* is the controlling precedent in the Ninth Circuit, and establishes that the local action doctrine is to be treated as a question of subject matter jurisdiction. Although the Supreme Court has not directly considered the distinction, it has used the term "jurisdiction" rather than not "venue" when referring to the doctrine. See, e.g., *Underwriters National Assurance Co. v. North*

One important question that is unresolved is what law to apply in determining whether a particular action is local or transitory. In *Livingston,* Chief Justice Marshall was "decidedly of [the] opinion, that the jurisdiction of the courts of the United States depends, exclusively, on the constitution and laws of the United States." *Livingston,* 15 F.Cas. at 665. In 1892, however, the Supreme Court interpreted *Livingston* in dicta as holding that the question was to be decided by the law of the forum state. *Huntington v. Attrill,* 146 U.S. 657, 669–70, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). See also *Kavouras v. Fernandez,* 737 F.Supp. 477, 478 (N.D.Ill. 1989) ("Even though that is the clear thrust of Chief Justice Marshall's statement in *Livingston,* a misreading of his opinion in a later Supreme Court (!) dictum, . . . has caused a number of courts to look to state law instead"); *Centennial Petroleum, Inc. v. Carter,* 529 F.Supp. 563, 565 n. 5 (1982) ("The dictum was apparently based on a misinterpretation of Chief Justice Marshall's opinion in *Livingston v. Jefferson* "); *Wheatley v. Phillips,* 228 F.Supp. 439, 441 (W.D.N.C.1964) ("Chief Justice Marshall was of the opinion that the federal courts should determine this question for themselves, . . . but later cases suggest, perhaps erroneously, that he held to the contrary").[7] Despite this apparent misapprehension, many lower

---

*Carolina Life and Accident and Health Insurance Guaranty Association,* 455 U.S. 691, 706 n. 11, 102 S.Ct. 1357, 71 L.Ed.2d 558(1982) (noting the "exclusive jurisdiction each State has to control the administration of real property within its borders").

7. The *Huntington* Court stated that "Chief Justice Marshall held that an action could not be maintained in Virginia, by whose law it was local," *Huntington,* 146 U.S. at 669–70, 13 S.Ct. 224, when in fact he stated that had the question been decided by Virginia law, the case would have been considered transitory, *Livingston,* 15 F.Cas. at 665 n. 5 ("In the state courts of Virginia all actions of debt for rent in arrear, all actions on the case for the use and occupation of lands and tenements, all actions of trespass quare clausum fregit, and all actions of waste, may now be prosecuted in the county or corporation in which the defendant may reside or be found, in like manner as transitory actions may be prosecuted therein"). Cf. *Pasos v. Pan American Airways,* 229 F.2d 271, 272 (2d Cir.1956) ("If [plaintiff] means that the statute merely extended the jurisdiction of the New York courts, and if Marshall's ruling still stands, it is most doubtful whether the district court had jurisdiction. For, in *Livingston v. Jefferson,* Marshall held that a statute of Virginia, if construed to authorize a suit for trespass to land outside Virginia, could not enlarge federal jurisdiction").

That the interpretation of *Livingston* in *Huntington* is dicta is explained in *Fisher:*

"That statement was dictum because the only issue before the Court in *Huntington* was the meaning of the terms 'penal' and 'penalty' in the context of the international law doctrine that penal laws of one jurisdiction will not be enforced in a foreign jurisdiction.

The local action doctrine was not necessary to determine that issue. Rather, the Court mentioned the local action doctrine in passing as part of a broad discourse on the issues of comity and the multijurisdictional enforcement of judgments. In expounding on the local action doctrine in that context, the Court relied primarily on a rather obvious misapprehension of the opinion in *Livingston.* Specifically, in *Huntington,* the Court understood Chief Justice Marshall to have applied Virginia law to decide whether the action in *Livingston* was local or transitory, and also understood him to have held that a trespass action was a local action under Virginia law. *Huntington,* 146 U.S. at 669–70 [146 U.S. 657]. That doctrine in *Huntington* cannot be squared on either count with the decision in *Livingston,* which actually held that the local action doctrine 'depends, exclusively, on the constitution and laws of the United States.' " *Fisher,* 243 F.Supp.2d at 543–44 (quoting *Livingston,* 15 F.Cas. at 665).

*Fisher* also noted that Supreme Court precedent both before and after Huntington confirmed that whether an action was local or transitory was to be determined by federal, rather than state, law. *Id.* at 544.

federal courts, including the Ninth Circuit, have followed the *Huntington* dicta and applied state law to determine the question. *Josevig–Kennecott Copper Co. v. James F. Howarth Co.*, 261 F. 567, 569 (9th Cir.1919) ("It is admitted that the question whether the action is local or transitory is to be determined by the law of the state"). See also *Miller & Lux Inc. v. Nickel*, 149 F.Supp. 463, 467 (N.D.Cal. 1957) ("Moreover, there is respectable authority indicating that the state law is to be taken into consideration in settling the local versus transitory question," citing *Josevig–Kennecott*, 261 F. at 569). It matters not whether the court might, in the absence of binding circuit authority, interpret *Livingston* differently. It is bound to apply *Josevig–Kennecott* as the law of the Ninth Circuit.

Under California law, prior to 1966, whether an action was local or transitory was governed by Article VI, § 5 of the California Constitution. Upon repeal of that provision, the question was governed by Code of Civil Procedure § 392, which broadened the definition of what constitutes a local action. 3 B.E. Witkin, CALIFORNIA PROCEDURE (5th ed. 2009) ACTIONS, § 792. Section 392 defines a local action, *inter alia*, as one seeking a determination or recovery of an interest in property as well as for injuries to property. CAL.CODE CIV. PROC. § 392(a). By contrast, the former constitutional provision denominated local "all actions for the recovery of the possession of, quieting the title to, or for the enforcement of liens upon real estate." Former CAL. CONST., Art. VI, § 5, quoted in Witkin, CALIFORNIA PROCEDURE, § 792. The broader definition set forth in § 392(a) applies in this case. Under that definition, venue is laid in the county where the real property is situated in the following types of actions:

"(1) For the recovery of real property, or of an estate or interest therein, or for the determination in any form, of that right or interest, and for injuries to real property.

(2) For the foreclosure of all liens and mortgages on real property." CAL.CODE CIV. PROC. § 392(a).

The former constitutional provision treated the local action doctrine as a question of subject matter jurisdiction; § 392, by contrast, treats it as a venue issue. Compare *Fritts v. Camp*, 94 Cal. 393, 397–98, 29 P. 867 (1892) (holding that only courts in the county where property was situated had jurisdiction to hear an action concerning the property) with *Nelson v. Crocker National Bank*, 51 Cal.App.3d 536, 540, 124 Cal.Rptr. 229 (1975) ("On the date of trial of the Alameda County action (and the motion to change venue), the law was abundantly clear that the place of filing an action affecting real property involves questions of venue only, not jurisdiction").

"In applying [§ 392] to determine the county (or counties) where venue is proper, the [California] courts generally look to the main relief sought, as determined from the complaint as it stands at the time of the motion for change of venue." *K.R.L. Partnership v. Superior Court*, 120 Cal.App.4th 490, 496–97, 15 Cal. Rptr.3d 517 (2004) (citing *Massae v. Superior Court*, 118 Cal.App.3d 527, 530, 173 Cal.Rptr. 527 (1981)). "One approach to fixing venue in an action involving multiple causes of action is to determine the essence of the action. What is its 'nature?' ... What is its 'subject-matter?' ... What is 'the main relief sought?' ... This approach ascertains the essential character of the action to establish venue." *Foundation Engineers, Inc. v. Superior Court*, 19 Cal.App.4th 104, 109, 23 Cal.Rptr.2d 469 (1993) (quoting *Smith v. Smith*, 38 P. 43, 4 Cal. Unrep. 860, 861 (1894); *Smith v. Smith*, 88 Cal. 572, 576, 26 P. 356 (1891); and *Grangers' Bank v. Superior Court*, 33 P. 1095, 4 Cal. Unrep. 130, 133 (1893)).

Thus, an action for specific performance of a contract for the sale of realty would be considered local if brought by the purchaser, because the purchaser seeks possession of the property. It would be considered transitory if filed by the vendor, because the vendor seeks only payment of the purchase price. *Foundation Engineers,* 23 Cal.Rptr.2d at 473 (citing *Santa Barbara Lodge No. 605 v. Penzner,* 104 Cal.App.2d 494, 231 P.2d 595 (1951); and *Work v. Associated Almond Growers,* 76 Cal.App. 708, 245 P. 790 (1926)). In *Massae,* a California appellate court held that where plaintiff sought reformation of a writing that "involve[d] the title to real property and the action would determine in some form a right or interest therein, the case [was] within the provisions of [§ 392]." *Massae,* 118 Cal.App.3d at 536, 173 Cal. Rptr. 527. Specifically, because plaintiffs sought to reform "an instrument creating a security interest in land," the action was local under § 392. *Id.*

■ Using this state venue provision to determine federal subject matter jurisdiction raises unique concerns. For example, some California courts hold that "[w]hen a plaintiff joins local and transitory causes of action [in a single action], venue follows the transitory cause of action." *Foundation Engineers,* 19 Cal.App.4th at 109, 23 Cal.Rptr.2d 469. They reach this result because repeal of the constitutional provision vested subject matter jurisdiction to hear local actions in all California courts; where only a local cause of action is asserted, § 392 lays venue where the real property is located. Where a local action is joined with a transitory action, however, § 392 does not control. Thus, to determine where venue is proper, California courts ask two questions: first, is there a local action within the definition of the statute; and second, is there also a transitory action such that venue is proper in more than one forum.

Because the local action doctrine vests exclusive jurisdiction in the state where the real property is situated, a federal court would not ask the second question. See *Clarke v. Clarke,* 178 U.S. 186, 191–92, 20 S.Ct. 873, 44 L.Ed. 1028 (1900) ("This is but to contend that what cannot be done directly can be accomplished by indirection, and that the fundamental principle which gives to a sovereignty an exclusive jurisdiction over the land within its borders is in legal effect dependent upon the nonexistence of a decree of a court of another sovereignty determining the status of such land. Manifestly, however, an authority cannot be said to be exclusive, or even to exist at all, where its exercise may be thus frustrated at any time"); see also *Durfee v. Duke,* 375 U.S. 106, 115, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (noting the Court's "emphatic expressions of the doctrine that courts of one State are completely without jurisdiction directly to affect title to land in other States"); *Voda v. Cordis Corp.,* 476 F.3d 887, 901 (Fed.Cir. 2007) ("[T]he local action doctrine informs us that exercising supplemental jurisdiction in this case appears to violate our own norms of what sovereigns ordinarily expect"); *Gulf Oil,* 821 F.2d at 287 ("Following *Livingston,* the Supreme Court has consistently recognized that a local action must be brought within the state where the land is located," and this rule "is so fundamental that state courts are not obligated to give full faith and credit to judgments from either federal or state courts sitting outside the local state's territorial boundaries"); *Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517, 1522 (D.C.Cir.1984) (Scalia, J.) ("[T]he local action rule ... makes the locality's power exclusive and deprives other courts of jurisdiction to settle questions involving real estate"); *Humble Oil & Refining Co. v. Copeland,* 398 F.2d 364, 367 (4th Cir. 1968) ("Texas courts, or federal courts sit-

ting in Texas, have exclusive jurisdiction over actions to determine title to realty within Texas, and neither the decision of the South Carolina Supreme Court nor a decision of the United States District Court for the District of South Carolina would be res judicata in a suit brought in a Texas court"); *Kingsborough v. Sprint Communications Co., L.P.*, 673 F.Supp.2d 24, 35 (D.Mass.2009) ("The Supreme Court has repeatedly recognized that exclusive *jurisdiction* over title to real property is vested in the courts of the state in which the property at issue is located.... These cases, along with *Ellenwood* and its progeny, establish that the question is one of the court's 'power' to adjudicate—in other

words, jurisdiction, rather than one of the parties' 'convenience,' or venue" (emphasis original)).

■ Stated differently, because the local action doctrine vests exclusive jurisdiction over actions involving land in the forum where the land is located, a federal court not sitting in that forum cannot exercise supplemental jurisdiction over such a claim. Federal courts simply do not recognize the form of "pendent venue" available under California law. Once a federal court determines the state that has exclusive jurisdiction over a local action, it must dismiss or transfer the action to a court sitting in that state.[8]

---

8. The fact that federal courts treat the local action doctrine as a matter of jurisdiction while California treats it as a matter of venue suggests that the Ninth Circuit might not reaffirm its decision in *Josevig–Kennecott* were it presented with the question today. That case concerned a local action in the state of Washington, which at the time treated the local action doctrine as a jurisdictional issue. *Josevig–Kennecott*, 261 F. at 569–70 ("It was held that the state court had jurisdiction of the subject-matter"). In its most recent application of the local action doctrine, the the Ninth Circuit noted briefly that "federal district courts' jurisdiction over actions concerning real property is generally coterminous with the states' political boundaries." It did not cite *Josevig–Kennecott*, however, or indicate whether it was applying state or federal law. *Byrne*, 291 F.3d at 1060. Additionally, the earliest reference to the erroneous nature of the *Huntington* dicta came nearly half a century after *Josevig–Kennecott* was decided. *Wheatley*, 228 F.Supp. at 441 ("Chief Justice Marshall was of the opinion that the federal courts should determine this question for themselves, ... but later cases suggest, perhaps erroneously, that he held to the contrary"). See also Note, *Local Actions in the Federal Courts*, 70 HARV. L. REV. 708, 710–11 & n. 20 (1957) ("And several courts have relied on a case which, in a dictum, erroneously implied that *Livingston v. Jefferson* stood for the proposition that state law should be applied").

Whether California or federal common law is applied, however, the result is the same.

The local action doctrine exists "to prevent a court from issuing an extraterritorial judgment that the court has no power to enforce, such as a judgment that would require officers in a foreign jurisdiction to put someone either in or out of possession of land." *Fisher*, 243 F.Supp.2d at 547. "A court also might find it necessary to use law enforcement officials to effectuate an order involving something less than possession, such as a survey." *Id.* Here, plaintiff's complaint suggests that foreclosure on the land in Texas may be imminent. (Complaint, ¶ 23.) To effectuate any orders issued in this case, the court might well have to order that possession of the property be transferred. Under Texas law, moreover, a mortgage is recorded by county officials; if plaintiff prevails, the court may have to order these officials to amend their records. See TEX. LOCAL GOV'T CODE § 192.001. *Gulf Oil*, 821 F.2d at 287 ("The local action rule is so fundamental that state courts are not obligated to give full faith and credit to judgments from either federal or state courts sitting outside the local state's territorial boundaries").

Among the few federal courts that have applied federal law, there has been consensus that the issue is one of choice of remedy. In *Van Beek v. Ninkov*, 265 F.Supp.2d 1037 (N.D.Iowa 2003), plaintiffs sought, *inter alia*, declaratory and injunctive relief that would have resulted in a transfer of title to land located in California. *Id.* at 1045. Citing Eighth and Seventh Circuit precedent, the court concluded that "[t]he 'determinative el-

■ Prawoto seeks rescission of a mortgage transaction that created a security interest in land located in Texas, and termination of the security interest.[9] *Massae*, therefore, controls. The fact that the complaint also seeks money damages does not undermine the conclusion that the action is local. "[T]he test for venue is not simply whether money damages are sought. An action may essentially be local although it seeks damages." *Foundation Engineers*, 19 Cal.App.4th at 111, 23 Cal. Rptr.2d 469. Prawoto seeks a combination of money damages and rescission or other termination of a contract granting PrimeLending a security interest in the Texas property, due primarily to a threat that PrimeLending will foreclose on the property. The main relief sought is the vesting of title to the property in Prawoto free of liens. Indeed, in the opening paragraphs

of Prawoto's complaint, she notes that "there is a threat of foreclosure on her home." [10] Prawoto's action, therefore, is local.

## B. Whether to Dismiss or Transfer Plaintiffs' Case

■ The conclusion that the Eastern District of Texas is the proper venue for plaintiff's claims does not compel dismissal of the action. If a court lacks jurisdiction over a federal civil action, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed." *Puri v. Gonzales*, 464 F.3d 1038, 1042 (9th Cir.2006) (quoting 28 U.S.C. § 1631). See 28 U.S.C. § 1361 ("Whenever a civil action is filed in a court ... and

ement' for a transitory action is whether the relief requested is 'personal' in nature, so that the court can act on the person or personal property of the defendant, in the court's control, rather than on the lands involved." *Id.* at 1044. In *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503, 506 (7th Cir. 1984), the court emphasized that plaintiffs did not seek to recover possession of property, although they might have been entitled to it. *Id.* at 509. The nature of the relief sought caused the court to conclude that the action was not local. In *McAdoo v. Union National Bank of Little Rock, Arkansas*, 558 F.2d 1313 (8th Cir.1977), the Eighth Circuit held:

"Where a debtor brings a suit against a secured creditor seeking to invalidate the obligation or to secure other relief with respect to it, his suit may be deemed transitory under governing local law or it may be considered to be a local action, and its characterization depends primarily on the nature of the relief sought. In determining whether the action is transitory or local, regard is to be had to the relief actually sought by the debtor and not to some other relief which he might have sought." *Id.* at 1317.

See also *Kavouras v. Fernandez*, 737 F.Supp. 477, 478 (N.D.Ill.1989) (finding that a mortgage foreclosure action had to be brought in Wisconsin, where the land was located, be-

cause otherwise the court would have been placed in "the untenable position of purporting to affect real estate title records in Wisconsin, purporting to require local officials there (over whom this Court clearly has no jurisdiction) to conduct a foreclosure sale or record its results—and it is scarcely necessary to extend the list of intolerable consequences"); *Centennial Petroleum, Inc. v. Carter*, 529 F.Supp. 563, 564–65 (D.Colo.1982) (finding that an action was transitory where plaintiff sought money damages only and there was no claim of trespass, waste, or injury to land). In combination with *Fisher*, these decisions make it clear that where plaintiff chooses a remedy that affects title to or possession of land, such that the court might have to order local officials to record a change in title or other records or effectuate a change in possession, plaintiff pursues an action that is inherently local and that must be brought in the state where the real property is situated. There is no question that Prawoto seeks remedies that affect title to the Texas land; he seeks, in fact, to quiet title in her favor. Under federal common law, therefore, this is a local action.

9. Complaint, ¶ 29.

10. *Id.*, ¶ 23.

that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed or noticed ...").  Thus, the court can transfer this case to Eastern District of Texas under 28 U.S.C. § 1631, "which allows transfer to cure want of [subject-matter] jurisdiction."  *Hernandez v. Campbell,* 204 F.3d 861, 865 n. 6 (9th Cir.2000); see *Gherebi v. Bush,* 352 F.3d 1278, 1302 n. 30 (9th Cir.2003) (" § 1631 relates to subject matter jurisdiction").

■  In the Ninth Circuit, "[o]nce the district court has determined that it lacks jurisdiction, but that another federal court has authority to hear the case, the district court 'must consider whether the action would have been timely if it had been filed in the proper forum on the date filed, and if so, whether a transfer would be in the interest of justice.'"  *Hays v. Postmaster General of United States,* 868 F.2d 328, 331 (9th Cir.1989) (citing *Taylor v. Social Security Administration,* 842 F.2d 232, 233 (9th Cir.1988), and quoting *Hill v. United States Air Force,* 795 F.2d 1067, 1070 (D.C.Cir.1986)).  If the action would have been timely if filed in the proper federal court on the date it was filed in the court lacking jurisdiction, and if a transfer would be in the interest of justice, the court "shall" transfer the action to the appropriate federal court.  See *id.; Puget Sound Energy, Inc. v. United States,* 310 F.3d 613, 620–21 (9th Cir.2002).  See also *Patriot Contract Services, LLC v. United States,* No. C–04–5428 MJJ, 2005 WL 851019, *1 (N.D.Cal. Apr. 13, 2005) ("Pursuant to 28 U.S.C. § 1631, where a court finds that it lacks subject matter jurisdiction over a case, it must transfer the case to 'any other such court in which the action or appeal could have been brought at the

time it was filed or noticed,'" quoting 28 U.S.C. § 1631).  The court may transfer an action to the appropriate federal court *sua sponte.*  *Hays,* 868 F.2d at 331 ("Although Hays did not move the court to transfer the case, we have held that '[a] motion to transfer is unnecessary because of the mandatory cast of section 1631's instructions,'" quoting *Harris v. McCauley (In re McCauley),* 814 F.2d 1350, 1352 (9th Cir.1987)).

■  PrimeLending does not dispute that the Eastern District of Texas has jurisdiction to hear Prawoto's action.  It appears however, that many of Prawoto's claims may have been time-barred when the action was filed on July 31, 2009.  The allegedly discriminatory acts that form the basis of Prawoto's claim under the Equal Credit Opportunity Act, for example, occurred prior to or at the same time as execution of the mortgage agreement on June 23, 2006.[11]  The Act states that "[n]o such action shall be brought ... later than two years from the date of the occurrence of the violation."  15 U.S.C. § 1691e(f).  Prawoto's Fair Housing Act claim is predicated on the fact that PrimeLending allegedly discriminated against her in setting the terms and conditions of the June 23, 2006 mortgage due to her race, ethnicity, and national origin.[12]  The terms and conditions were set and the agreement executed more than three years before the complaint was filed;  the Fair Housing Act requires that "[a]n aggrieved person ... commence a civil action ... not later than 2 years after the occurrence of an alleged discriminatory housing practice."  42 U.S.C. § 3613(a)(1)(A).  Similarly, Prawoto's claim under the Unruh Act alleges discrimination in setting the terms and conditions of the mortgage agreement.  Unruh Act claims are subject to a one-year

---

11.  *Id.,* ¶¶ 44–45.

12.  *Id.,* ¶¶ 37–39.

statute of limitations. *Gatto v. County of Sonoma,* 98 Cal.App.4th 744, 757–59, 120 Cal.Rptr.2d 550 (2002) (explaining that the provisions of the Unruh Act that derive from the common law, including California Civil Code § 51, carry a one-year statute of limitations). Plaintiff's California Civil Code § 1632 claim alleges that the documents signed on June 23, 2006 were not translated into Bahasa. Like Unruh Act claims, § 1632 claims are governed by a one-year statute of limitations. See *Delino v. Platinum Community Bank,* 628 F.Supp.2d 1226, 1235 (S.D.Cal.2009) (finding that a § 1632 claim regarding the translation of documents is governed by the one-year statute of limitations set forth in California Code of Civil Procedure § 340(a)). It is thus unclear whether any of Prawoto's discrimination claims were timely filed.

There is also substantial question as to whether plaintiff's claims under the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") were timely. See 15 U.S.C. § 1640(e) ("Any action under [TILA] may be brought in any United States district court . . . within one year from the date of the occurrence of the violation"); *King v. California,* 784 F.2d 910, 913–15 (9th Cir. 1986) ("[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly"); 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be bought in the United States district court . . . within 3 years in the case of a violation of section 2605 and 1 year in the case of a violation of section 2607 or 2608"); *Brewer v. Indymac Bank,* 609 F.Supp.2d 1104, 1117 (E.D.Cal.2009) ("The Ninth Circuit has not decided whether the doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the violations that form the basis of plaintiffs' RESPA action"). Because Prawoto has not opposed the motion to dismiss, the court is not in a position to determine whether equitable tolling is available for her TILA and RESPA claims.

Several of Prawoto's state law claims, by contrast, appear to be timely. The statute of limitations on Prawoto's breach of fiduciary duty claim is four years. *Stalberg v. Western Title Insurance Co.,* 230 Cal. App.3d 1223, 1230, 282 Cal.Rptr. 43 (1991) (citing Cal.Code Civ. Proc. § 343). While the statute of limitations on Prawoto's fraud claim is three years, *F.D.I.C. v. Dintino,* 167 Cal.App.4th 333, 348, 84 Cal. Rptr.3d 38 (2008), it does not commence to run until Prawoto knew facts sufficient to place a reasonably prudent person on notice that fraud had been committed. *Cleveland v. Internet Specialties West, Inc.,* 171 Cal.App.4th 24, 31, 88 Cal. Rptr.3d 892 (2009). The complaint does not allege sufficient facts to determine when the fraud cause of action accrued. It is thus possible that this claim is timely. Prawoto's claim for violation of California Business and Professions Code § 17200 also appears to be timely. See Cal. Bus. & Prof.Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"). Finally, Prawoto's claim alleging a breach of the

implied covenant of good faith and fair dealing, to the extent it sounds in contract, is governed by a four-year statute of limitations. *Archdale v. American International Specialty Lines Insurance Co.*, 154 Cal.App.4th 449, 472–73, 64 Cal.Rptr.3d 632 (2007).[13]

There is limited authority as to how a court should apply § 1631 to an action that alleges some claims that are time-barred, and others that may be timely. The Federal Court of Claims has held that where "the entire action is barred from proceeding in this forum, [yet] some—but not all—of the claims therein may be properly heard in another court ... we may be able to render plaintiff some limited assistance via 28 U.S.C. § 1631. Said section allows us to transfer claims over which we lack jurisdiction to a court wherein jurisdiction is proper." *Lan–Dale Co. v. United States*, 60 Fed.Cl. 299, 303 (2004). Given this limited authority, and the court's conclusion that the timeliness of several of plaintiff's causes of action cannot be fully ascertained on the present record, the court finds it appropriate to evaluate whether transfer or dismissal best serves the interests of justice.

Prawoto alleges that foreclosure is imminent and seeks equitable relief to prevent such action. The parties would clearly benefit from a prompt resolution that will resolve their competing interests in the Texas property. "[Section 1631] serves to 'aid litigants who were confused about the proper forum for review.'" *In re McCauley*, 814 F.2d 1350, 1352 (9th Cir.1987) (quoting *American Beef Packers, Inc. v. ICC*, 711 F.2d 388, 390 (D.C.Cir. 1983)). As the court's opinion has highlighted, the local action doctrine is among the more obscure and confusing jurisdictional doctrines. Consequently, the court concludes that plaintiff should not be penalized for misapprehending its application to this case.

Having decided that at least some claims may be timely and that the interests of justice favor transfer over dismissal, the court transfers this action to the Eastern District of Texas.

## II. CONCLUSION

For the reasons stated, defendant's motion to dismiss is denied. Defendant's motion to transfer the case to the Eastern District of Texas is granted, and the court directs the clerk to transfer the action forthwith.

---

**13.** Prawoto includes a claim for breach of the covenant of good faith and fair dealing on the caption page of her complaint, but does not plead such a claim substantively. Consequently, the court cannot determine whether the claim sounds in contract, and is thus subject to a four year statute of limitations, or in tort, such that a two year statute of limitations applies. *Archdale,* 154 Cal.App.4th at 472–73, 64 Cal.Rptr.3d 632.